## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED )
   TRADES INDUSTRY PENSION FUND )
GARY J. MEYERS, in his official capacity as )
   a fiduciary, )
1750 New York Avenue, N.W. )
Washington, DC 20006-5387 )
       )
                 Plaintiffs )     CIVIL ACTION NO.
   v. )
       )
SASHCO SECURITY, INC. )
     a/k/a Sashco Security Inc. )
     a/k/a Sashcho, Inc. )
720 S. Rochester Ave., Suite D )
Ontario, CA 91761 )
       )
                 Defendants )

## COMPLAINT

Plaintiffs, by undersigned counsel, complain as follows.

## JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action under 29 U.S.C.

§§ 1132, 1145; 29 U.S.C. § 185(a); and/or 28 U.S.C. § 1331. The claims asserted are all made

under federal statutes or federal common law, but the supplemental jurisdiction of the Court

under 28 U.S.C. § 1367(a) also extends to any claims that are found to lie under state law.

2.    A copy of this Complaint is being served on the Secretary of Labor and the

Secretary of Treasury of the United States by certified mail in accordance with 29 U.S.C. §

1132(h) .

## VENUE

3.      Venue lies in the District of Columbia under 29 U.S.C. § 1132(e)(2), 29 U.S.C. §

185(a) and/or 28 U.S.C. § 1391(b).

## PARTIES

4.      Plaintiff International Painters and Allied Trades Industry Pension Fund a/k/a

Painters and Allied Trades International Industry Pension Fund a/k/a PAT International Pension

Fund a/k/a PAT International Union and Industry Pension Fund ("Fund" or "Pension Fund") is a

trust fund established under 29 U.S.C. § 186(c)(5). Its Trustees are the "named fiduciary," "plan

administrator" and "plan sponsor" and each is an individual "fiduciary," within the meaning of

29 U.S.C. §§ 1102(a), 1002(16), (21), for the International Painters and Allied Trades Industry

Pension Plan ("Pension Plan") and International Painters and Allied Trades Industry Annuity

Plan ("Annuity Plan"). The Pension Plan and Annuity Plan are each a "multiemployer plan,"

"employee benefit plan" and "employee benefit pension plan" within the meaning of 29 U.S.C. §

1002(37), (2) and (3). The Fund, Pension Plan and Annuity Plan maintain their principal place of

business and are administered from an office in this district at the address for the Fund in the

caption of this Complaint.

5.      Plaintiff, Gary J. Meyers ("Meyers" and, together with "Fund," "Plaintiffs") is a

fiduciary of the Funds within the meaning of 29 U.S.C. § 1002(21) with respect to collection of

contributions due the Funds and related matters. He has a business address as listed in the caption

and is authorized to bring this action on behalf of all Trustees of the Fund and the Funds as

organizations.

6.      The Fund and Meyers are authorized collection fiduciary(ies) and agent(s) for:

        (a)      the Pension Plan,

(b)    the Annuity Plan,

(c)    the Political Action Together Fund, which includes the Political Action Together – Legislative and Educational Committee and  Political Action Together – Political Committee (jointly or severally, "PAT Fund"), which is an unincorporated association or fund established pursuant to 2 U.S.C. § 431 et seq. by the International Union of Painters and Allied Trades for the purpose of advancing the political interests of its members by lawfully influencing the selection, nomination, election and/or appointment of individuals for political office,

(d)    the Finishing Trades Institute f/k/a International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund ("FTI"),  which is a trust fund established under 29 U.S.C. § 186(c)(5) and "multiemployer plans" and "employee benefit plan" and "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(37), (1), and (3), and

(e)    the Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI"), which is an entity that performs certain employer association functions, but is also an unincorporated organization established under 29 U.S.C. § 186(c)(9).

7.    The PAT Fund, FTI and LMCI are jointly or severally referenced as "Ancillary Funds" and maintain their principal place of business and are administered from an office in this district.

8.    The Fund and Meyers, in their capacity as authorized collection fiduciary(ies) and agent(s) sue on behalf of the Pension Plan, the Annuity Plan, the PAT Fund, FTI and LMCI.

9.    The Fund, Pension Plan, Annuity Plan, FTI and, as allowed by law, LMCI, are jointly or severally referenced as the "ERISA Funds." The ERISA Funds, LMCI and PAT Fund are hereinafter jointly or severally referenced as the "Funds."

10.    Defendant, Sashco Securitiy, Inc. a/k/a Sashco Security Inc. a/k/a Sashco Inc. ("Company") is a California corporation and an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(2), (6) and (7), 1002(5), (11) and (12) with a business office at the address listed in the caption. The Company does business with the Fund that is sufficient to create personal jurisdiction over the Company in this district and a substantial part of the events or omissions giving rise to the claim occurred from transactions with the Funds' office(s) in this district.

## COMMON FACTS

11.    At all times relevant to this action, the Company was party to or agreed to abide by the terms and conditions of a collective bargaining agreements (singly or jointly, "Labor Contracts") with two or more local labor unions or district councils affiliated with the International Union of Painters and Allied Trades, AFL-CIO, CLC (the locals, district councils and International being referred to jointly as "Union"). True and correct copies of the cover pages, table of contents, contribution provisions and joinder or signature pages of the Labor Contracts are attached as Exhibits 1 and 2.

12.    The Company also signed or agreed to abide by the terms of the Agreement and Declaration of Trust of the Fund ("Trust Agreement"), made between certain employers and employee representatives in an industry(ies) affecting interstate commerce to promote stable and peaceful labor relations, and the plan documents for the ERISA Funds. A true and correct copy of the Trust Agreement for the Fund is attached as Exhibit 3. True and correct copies of the cover page, table of contents §§ 10.07, 10.08, 10.11, and 10.12 and signature page of the Pension Plan are attached as Exhibit 4, and the Annuity Plan has parallel terms.

13.    Under the Labor Contracts, Trust Agreement, plan documents of the ERISA Funds or other documents, the Company agreed:

(a)    To make full and timely payment on a monthly basis to the Funds, as required by the Labor Contracts, Trust Agreement and plan documents. Ex. 3, p.15 (Art.VI, § 2); Ex. 3, § 10.07.

(b)    To file monthly remittance reports with the Funds detailing all employees or work for which contributions were required under the Labor Contract. Ex. 3, pp.15-16 (Art.VI, §§ 3, 5).

(c)    To produce, upon request by the Funds, all books and records deemed necessary to conduct an audit of the Company's records concerning its obligations to the Funds and to pay the cost of the audit if found to be delinquent or in violation of the Trust Agreement or Plan. Ex. 3, pp.16-17 (Art.VI, § 6).

(d)    To pay liquidated damages, late charges, interest, audit costs, and all costs of litigation, including attorneys' fees, expended by the Funds to collect any amounts due as a consequence of the Company's failure to comply with its contractual and statutory obligations described in Subparagraphs (a), (b) and (c). Ex. 3, pp. 16-17 (Art.VI, §§4, 6); Ex. 4, §§ 10.07, 10.12.

14.    All conditions precedent to this lawsuit or the relief it seeks have been satisfied.

## COUNT I - CONTRIBUTIONS UNDER ERISA - SUM CERTAIN

## PLAINTIFFS

### v.

## COMPANY

15.     The allegations of Paragraph 1 through 14 are incorporated by reference as if fully restated.

16.     Company has failed to timely and fully pay to the ERISA Funds amounts due under the Labor Contracts, Trust Agreements and Plan for March 2007, April 2007 and for the period October 2007 to the present in at least the sum of $37,851.47 based upon information presently available to the ERISA Funds in violation of 29 U.S.C. § 1145.

17.     The ERISA Funds are adversely affected and damaged by the Company's violation of 29 U.S.C. § 1145.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)     Enter judgment against Company in favor of the Plaintiffs, for the benefit of the ERISA Funds, for at least the sum certain amount plus any additional amounts which may become due during the pendency of this lawsuit together with late charges, interest at the rate(s) prescribed by 26 U.S.C. § 6621 from the due date for payment until the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid contributions or liquidated damages provided by the documents governing the ERISA Funds or statute, the cost of any audit and reasonable attorneys' fees and costs incurred in this action or the collection or enforcement of any judgment all as provided under the Trust Agreements, plan documents of the ERISA Funds, and 29 U.S.C. § 1132(g)(2).

(2)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

**COUNT II - AUDIT**

**PLAINTIFFS**

**v.**

**COMPANY**

18.    The allegations of Paragraphs 1 through 14 are incorporated by reference as if fully restated.

19.    The amount of contributions the Company is required to pay to the Funds is based upon hours worked and paid to employees performing work covered by the Labor Contracts.

20.    The Funds are without sufficient information or knowledge to plead the precise nature, extent and amount of the Company's delinquency because the books, records and information necessary to determine this liability are in the exclusive possession, custody and control or knowledge of the Company.

21.    Computation of the precise amount of an employer's delinquency is best achieved by an audit of the employer's books and records to compare them to contractually-required remittance reports submitted by the employer.

22.    No audit of the Company's books and records has been performed.

23.    The Company is required by the Labor Contracts, Trust Agreements, plan documents of the ERISA Funds and/or applicable law to permit the Funds to audit its records, to cooperate in determining the contributions due the Funds and to pay the cost of the audit if found to be delinquent.

24.    The Funds and their fiduciaries or officers are adversely affected or damaged by the lack of an audit as, among other things, they have a duty to audit and confirm amounts due from contributing employers.

25.    The Funds and their fiduciaries or officers have no adequate remedy at law for lack of an audit as the calculation of any damages suffered as a result of the breach requires an audit.

**WHEREFORE,** Plaintiffs ask that the Court:

(1)    Enjoin the Company, its officers, agents, servants, employees, attorneys and all others in active concert or participation with them to permit an audit of all records under the actual or constructive control of the Company and, in the absence of records, to cooperate in alternative methods for the determination of work for which contributions are due.

(2)    Order the Company to pay for an audit by a Certified Public Accountant chosen by the Funds, and

(3)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT III - CONTRIBUTIONS UNDER ERISA AFTER AUDIT

## PLAINTIFFS

v.

## COMPANY

26.    The allegations of Paragraphs 1 through 25 are incorporated by reference as if fully restated.

27.     On information and belief, the Company has failed to make contributions to the ERISA Funds in violation of 29 U.S.C. § 1145 in a period not barred by an applicable statute of limitations or similar bar.

28.     The ERISA Funds are adversely affected or damaged by the Company's violation of 29 U.S.C. § 1145.

**WHEREFORE,** Plaintiffs ask that the Court:

(1)     After an audit, enter judgment against the Company in favor of Plaintiffs, for the benefit of the Funds, for the contributions found due and owing by the audit, together with late charges, interest at the rate(s) prescribed by 26 U.S.C. § 6621 from the due date for payment until the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid contributions or liquidated damages provided by the plan document(s) or statute(s), the cost of the audit, and reasonable attorneys' fees and costs incurred in this action and in connection with any proceedings to enforce or collect any judgment all as provided under the Trust Agreements, Plan and 29 U.S.C. § 1132(g)(2).

(2)     Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT IV - CONTRIBUTIONS UNDER CONTRACT - SUM CERTAIN

### PLAINTIFFS

### v.

### COMPANY

29.     The allegations of Paragraphs 1 through 17 are incorporated by reference as if fully restated.

30.    The Company has not paid the Funds as required by the Labor Contract, and other documents incorporated by the Labor Contract, such as the Trust Agreements or plan documents of the ERISA Funds.

31.    Plaintiffs have been damaged as a proximate result of the breach of Labor Contract and/or its incorporated documents by Company.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)    Enter judgment against the Company and in favor of Plaintiffs, for the benefit of the Funds, for the sum certain currently due plus any additional amounts which become due and owing during the pendency of this litigation or as a result of an audit together with liquidated damages, interest and costs, including reasonable attorneys' fees incurred in this action or the collection or enforcement of any judgment, as provided in the Labor Contract and Trust Agreements.

(2)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT V - CONTRIBUTIONS UNDER CONTRACT – AFTER AUDIT

### PLAINTIFFS

**v.**

### COMPANY

32.    The allegations of Paragraphs 1 through 31 are incorporated by reference as if fully restated.

33.    Plaintiffs are damaged as a proximate result of the breach of the Labor Contract and its incorporated documents by Company with respect to any amounts found due in an audit.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)    Enter judgment against the Company and in favor of Plaintiffs, for the benefit of the Funds, for the sum certain currently due plus any additional amounts which become due and owing during the pendency of this litigation or as a result of an audit together with liquidated damages, interest and costs, including reasonable attorneys' fees incurred in this action or the collection or enforcement of any judgment, as provided in the Labor Contract and Trust Agreements.

(2)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

KENT CPREK
Bar No. 478231
JENNIFER L. HOPE
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0615/0617
Attorneys for Plaintiffs

Date: June 6, 2008

*Application for Pro Hac Admission of Jennifer L. Hope shall be made at the appropriate time.

# CIVIL COVER SHEET

JS-44
(Rev. 2/01 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| International Painters and Allied Trades Industry Pension Fund, et al. | Sashco Security, Inc., a/k/a Sashco Security Inc., a/k/a Sashco, Inc., 720 South Rochester Avenue, Suite D, Ontario, CA  91761 |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: In land condemnation cases, use the location of the tract of land involved |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Kent Cprek, Esquire Jennings Sigmond, P.C., The Penn Mutual Towers, 16th Floor, 510 Walnut Street, Phila., PA 19106 (215) 351-0615 | |

## II BASIS OF JURISDICTION
(SELECT ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
(FOR DIVERSITY CASES ONLY!)   (SELECT ONE FOR PLAINTIFF AND ONE FOR DEFENDANT)

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Select one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
- ☐ 410 Antitrust

### ○ B. Personal Injury/ Malpractice
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment

*(If Antitrust, then A governs)*

## ○ E. General Civil (Other)     OR     ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ G.  Habeas Corpus/2255 | ○ H.  Employment Discrimination | ○ I.  FOIA/PRIVACY ACT | ○ J.  Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ◉ K.  Labor/ERISA (non-employment) | ○ L.  Other Civil Rights (non-employment) | ○ M.  Contract | ○ N.  Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

29 U.S.C. Section 185(a), 1132 and 1145 Action to collect unpaid contributions due under a collective bargaining agreement

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ _____  Select YES only if demanded in complaint

JURY DEMAND: ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)    ☐ YES  ☒ NO    If yes, please complete related case form.

DATE  June 6, 2008    SIGNATURE OF ATTORNEY OF RECORD  _(signature)_

---

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# COLLECTIVE BARGAINING AGREEMENT

BETWEEN



THE

## INTERNATIONAL UNION OF
## PAINTERS AND ALLIED TRADES
## DISTRICT COUNCIL 78
AND
## SIGNATORY EMPLOYERS

EFFECTIVE DATES
JULY 1, 2006 THROUGH JUNE 30, 2011

**EXHIBIT**



# INDEX

| | | |
|---|---|---|
| RECOGNITION | ARTICLE 1 | PAGE 1 |
| JURISDICTION | ARTICLE 2 | PAGE 1 |
| DEFINITIONS | ARTICLE 3 | PAGE 3 |
| FUNCTIONS OF MANAGEMENT | ARTICLE 4 | PAGE 4 |
| WORKERS COMPENSATION | ARTICLE 5 | PAGE 4 |
| PAYMENT OF WAGES & DEDUCTIONS | ARTICLE 6 | PAGE 4 |
| OUT OF AREA WORK | ARTICLE 7 | PAGE 4 |
| PRESERVATION OF WORK | ARTICLE 8 | PAGE 5 |
| SUB-CONTRACTING | ARTICLE 9 | PAGE 5 |
| NO WORK STOPPAGE | ARTICLE 10 | PAGE 6 |
| PICKET LINE CLAUSE | ARTICLE 11 | PAGE 6 |
| NO DISCRIMINATION CLAUSE | ARTICLE 12 | PAGE 6 |
| GENERAL CONDITIONS | ARTICLE 13 | PAGE 6 |
| D.C. REPRESENTATIVES | ARTICLE 14 | PAGE 7 |
| STEWARDS | ARTICLE 15 | PAGE 7 |
| MARKET RECOVERY | ARTICLE 16 | PAGE 8 |
| SAFETY & CODE COMPLIANCE | ARTICLE 17 | PAGE 8 |
| WAGES, BENEFITS & DEDUCTIONS | ARTICLE 18 | PAGE 9 |
| HIRING PROCEDURES | ARTICLE 19 | PAGE 15 |
| D.C. APPRENTICESHIP & TRAINING | ARTICLE 20 | PAGE 15 |
| JOINT TRADE BOARD | ARTICLE 21 | PAGE 17 |
| TRUST FUNDS & CONTRIBUTIONS | ARTICLE 22 | PAGE 17 |
| EMPLOYEE GRIEVANCES | ARTICLE 23 | PAGE 20 |
| GENERAL SAVINGS CLAUSE | ARTICLE 24 | PAGE 20 |
| SUCCESSORS CLAUSE | ARTICLE 25 | PAGE 20 |
| IUPAT  NOT A PARTY TO AGREEMENT | ARTICLE 26 | PAGE 21 |
| CLAUSES & DURATION | ARTICLE 27 | PAGE 21 |
| SIGNATURE PAGE | | PAGE 21 |

District Council 78 Main Office:
1300 S. Andrews Avenue
Pompano Beach, Florida 33069
Phone: (954) 946-9310
Fax:    (954) 946-9311

District Council 78 Orlando Office: (Contracts Division)
2153 W. Oakridge Road
Orlando, Florida 32809
Phone: (407) 852-3977
Fax:    (407) 856-8135
Contact: Tonya King

District Council 78 Tampa Office:
8840 S. US HWY 301
Riverview, Florida 33569
Phone: (813) 672-9518
Fax:    (813) 672-9470

District Council 78 Jacksonville Office:
4951 Richard Street, Building C
Jacksonville, Florida 32207
Phone: (904) 731-3828
Fax:    (904) 731-5756

## PREAMBLE

Whereas: It is the desire of all signatory Employers and/or Associations and the International Union of Painters and Allied Trades District Council 78 of the State of Florida to promote and expand the mutual interest of "all" concerned; to enter into an Agreement covering the items and conditions of work coming under the jurisdiction of the International Union of Painters and Allied Trades.

## AGREEMENT

This Agreement made and entered into on July 1, 2006 between signatory Employers and/or Associations (hereinafter referred to as Employer(s) and D.C. 78 (hereinafter referred to as the Union and/or D.C. affiliated with the International Union of Painters and Allied Trades; (I.U.P.A.T.), AFL-CIO, CLC.

Therefore the Employer and the Union do hereafter adopt and agree to:

## ARTICLE 1

### RECOGNITION

### SECTION 1.

The Employer recognizes, acknowledges, and agrees that District Council 78 is, within the meaning of Section 9(a) of the National Labor Relations Act, the exclusive representative for the purpose of collective bargaining, of all the Employer's employees wherever such employees may be employed, in the following classifications of work:

**Painting, Drywall Finishing, Wall Covering, Sign Painting, Glass and Glazing (Journeyperson, Apprentice and all other classification(s) of workers covered, herein),** excluding office, clerical employees, salespersons, guards and supervisors as defined in the Act.

## ARTICLE 2

### JURISDICTION

### SECTION 1.

This International Union shall have jurisdiction over all workers engaged in: all painting, decorating and coatings applications and wall covering; all levels of drywall and wall finishing; any and all labor, material, tools or equipment for preparatory work or surface treatment work in relation to painting, decorating and coating applications, wall covering, drywall and wall finishing; glazing; architectural metal and glass work; flooring and decorative floor covering work; paint and coatings manufacturing; sign, convention and display work; show decorators; scenic artists and designers; metal polishers; civil service, public and professional employees; book-binding; maintenance work; chemical, clerical and warehouse workers; any and all units, as well as all apprentice able crafts, that have historically been part of this International Union; and any and all work as may be obtained and maintained through organizing and collective bargaining. Such work shall include, but not limited to:

### SECTION 2-PAINTERS

Work will include, but not limited to: (1) preparation, application and removal of all types of coatings and coating systems in relation to all painting, decorating, protective coatings, coating and staining of concrete floors and toppings, waterproofing, masonry restoration, fireproofing, fire retarding, metal polishing, refinishing, sealing, lining, fiber glassing, E-Glass fiberglass, carbon fiber, encapsulating, insulating, metalizing, flame spray, the application of Exterior Insulating Finishing Systems; (2) each and all such applications, and similar or substitute applications, on all surfaces, interior and exterior, to include, but not to be limited to: residences; buildings; structures; industrial, power, chemical and manufacturing plants; bridges; tanks; vats; pipes; stacks; light and high tension poles; parking, traffic and air strip lines; trucks; automobile and railroad cars; ships; aircraft; and all machinery and equipment; (3) any and all material used in preparation, application or removal of any paint, coatings or applications, including, but not limited to: the handling and use of thinners, dryers, sealers, binders, pigments, primers, extenders, air and vapor barriers, emulsions, waxes, stains, mastics, plastics, enamels, acrylics, epoxies, epoxy injection and T-Lock welding, alkalis, sheet rubber, foams, seamless and tile-like coatings, etc.; (4) all preparation for and removal of any and all materials for finishes, such as deep cleaning, patching, all levels of finishing, taping/finishing skim coating, pointing, caulking, high pressure water, chemical and abrasive blasting, environmental blasting, wet/dry vacuum work, chemical stripping, scraping, air tooling, bleaching, steam cleaning, asbestos and lead abatement/removal; mold remediation and vapor barrier systems (5) the inspection of all coatings and/or coating systems during their applications will be performed by members of this International Union.

1

ARTICLE 18

SECTION 1.

WAGES, FRINGE BENEFITS, DEDUCTIONS AND HOURS OF WORK

EFFECTIVE JULY 1, 2006 THROUGH JUNE 30, 2011

As a condition of employment, all employees (apprentice through foreman) must participate in an OSHA 10- hour training course. Those members who have a current OSHA 10 hour training certificate must take 10 hours of an elective training course sponsored by District Council 78 JATF and enforced by all Signatory Employers.

## PAINTER, DRYWALL FINISHER, PAPER HANGER

ZONE I –ᴸᵁ164 (JACKSONVILLE) Baker, Bay, Bradford, Calhoun, Columbia, Clay, Duval, Escambia, Franklin, Gadsden, Gulf, Hamilton, Holmes, Jackson, Jefferson, Liberty, Leon, Madison, Nassau, Okaloosa, Putnam, Santa Rosa, St. Johns, Suwannee, Taylor, Union, Wakulla, Walton and Washington Counties. (000164)

– LU 88 (TAMPA) Alachua, Charlotte, Citrus, Desoto, Dixie, Gilchrist, Hardee, Hernando, Highlands, Hillsborough, Lafayette, Lee, Levy, Manatee, Marion, Pasco, Pinellas, Polk, Sarasota and Sumter Counties (000088)

ZONE II– LU1010 (ORLANDO) Brevard, Flagler, Lake, Orange, Osceola, Seminole and Volusia Counties (C01010)

ZONE III– LU1010 CAPE CANAVERAL AIR STATION, PATRICK AIR FORCE BASE, KENNEDY SPACE (801010 CENTER & MALABAR RADAR SITE) Brevard County

ZONE IV – LU365 (SOUTH FLORIDA) Broward, Collier, Glades, Hendry, Indian River, Martin, Miami-Dade, Monroe, LU452 Okeechobee, Palm Beach and St. Lucie Counties. (000365) (000452)

# PAINTER

## INDUSTRIAL – (LU164, 88)

| Zone I – | 1-Oct-06 | 1-Jul-07 | 1-Jul-08 | 1-Jul-09 | 1-Jul-10 |
|---|---|---|---|---|---|
| Wage | 18.00 | 18.50 | 19.00 | opener | opener |
| Health & Welfare | 3.60 | 3.70 | 3.75 | | |
| Pension | 1.25 | 1.90 | 2.50 | | |
| DC 78 FTI | 0.55 | 0.55 | 0.55 | | |
| LMCI | 0.05 | 0.05 | 0.05 | | |
| IUPAT FTI | 0.05 | 0.05 | 0.05 | | |
| Total Package | 23.50 | 24.75 | 25.90 | | |

| Zone II – (LU1010) (C01010) | 1-Oct-06 | 1-Jul-07 | 1-Jul-08 | 1-Jul-09 | 1-Jul-10 |
|---|---|---|---|---|---|
| Wage | 18.00 | 18.50 | 19.00 | opener | opener |
| Health & Welfare | 3.60 | 3.70 | 3.75 | | |
| Pension | 2.30 | 2.50 | 2.50 | | |
| DC 78 FTI | 0.55 | 0.55 | 0.55 | | |
| LMCI | 0.05 | 0.05 | 0.05 | | |
| IUPAT FTI | 0.05 | 0.05 | 0.05 | | |
| Total Package | 24.55 | 25.35 | 25.90 | | |

9

# PAINTER
## INDUSTRIAL

| Zone III – (_LU1010_ <br>_(001010)_) | 1-Jul-06 | 1-Jul-07 | 1-Jul-08 | 1-Jul-09 <br>opener | 1-Jul-10 <br>opener |
|---|---|---|---|---|---|
| Wage | 20.75 | | | | |
| Health & Welfare | 3.60 | 1.25 To be distributed between wages and fringe benefits | 1.25 To be distributed between wages and fringe benefits | | |
| Pension | 2.50 | | | | |
| Annuity | 2.00 | | | | |
| DC 78 FTI | 0.55 | | | | |
| LMCI | 0.05 | | | | |
| IUPAT FTI | 0.05 | | | | |
| Total Package | 29.50 | 30.75 | 32.00 | | |

|  ZONE IV South <br>FL – (_LU 365, 452_) | 1-Oct-06 | 1-Jul-07 | 1-Jul-08 | 1-Jul-09 <br>opener | 1-Jul-10 <br>opener |
|---|---|---|---|---|---|
| Wage | 18.00 | 18.50 | 19.00 | | |
| Health & Welfare | 3.60 | 3.70 | 3.75 | | |
| Pension | 1.25 | 1.90 | 2.50 | | |
| DC 78 FTI | 0.55 | 0.55 | 0.55 | | |
| LMCI | 0.05 | 0.05 | 0.05 | | |
| IUPAT FTI | 0.05 | 0.05 | 0.05 | | |
| Total Package | 23.50 | 24.75 | 25.90 | | |

# PAINTER
## BRIDGES/NUCLEAR POWER PLANTS – (_LU164, 88, 365, 452_)

| | 1-Aug-06 | 1-Jul-07 | 1-Jul-08 | 1-Jul-09 <br>opener | 1-Jul-10 <br>opener |
|---|---|---|---|---|---|
| Wage Differential | 20.00-23.00 | 21.00-24.00 | 22.00-25.00 | | |
| Base Wage | 20.00 | 21.00 | 22.00 | | |
| Health & Welfare | 3.60 | 3.70 | 3.75 | | |
| Pension | 1.25 | 1.90 | 2.50 | | |
| DC 78 FTI | 0.55 | 0.55 | 0.55 | | |
| LMCI | 0.05 | 0.05 | 0.05 | | |
| IUPAT FTI | 0.05 | 0.05 | 0.05 | | |
| Total Package | 25.50 | 27.25 | 28.90 | | |

# PAINTER/PAPERHANGER
## RESIDENTIAL/COMMERCIAL

| Zone I – (_LU164,88_) | 1-Jul-06 | 1-Jul-07 | 1-Jul-08 | 1-Jul-09 <br>opener | 1-Jul-10 <br>opener |
|---|---|---|---|---|---|
| Wage | 16.00 | 16.00 | 16.00 | | |
| Health & Welfare | 3.60 | 3.70 | 3.75 | | |
| Pension | 1.25 | 1.90 | 2.50 | | |
| DC 78 FTI | 0.55 | 0.55 | 0.55 | | |
| LMCI | 0.05 | 0.05 | 0.05 | | |
| IUPAT FTI | 0.05 | 0.05 | 0.05 | | |
| Total Package | 21.50 | 22.25 | 22.90 | | |

# PAINTER/PAPERHANGER

## RESIDENTIAL/COMMERCIAL

| Zone II – (Cololo) | 1-Jult-06 | 1-Jul-07 | 1-Jul-08 | 1-Jul-09 | 1-Jul-10 |
|---|---|---|---|---|---|
| Wage | 16.00 | 16.50 | 17.00 | opener | opener |
| Health & Welfare | 3.60 | 3.70 | 3.75 | | |
| Pension | 2.30 | 2.50 | 2.50 | | |
| DC 78 FTI | 0.55 | 0.55 | 0.55 | | |
| LMCI | 0.05 | 0.05 | 0.05 | | |
| IUPAT FTI | 0.05 | 0.05 | 0.05 | | |
| Total Package | 22.55 | 23.35 | 23.90 | | |

| ZONE IV – (LO 360, 452) | 1-Jult-06 | 1-Jul-07 | 1-Jul-08 | 1-Jul-09 | 1-Jul-10 |
|---|---|---|---|---|---|
| Wage | 16.00 | 16.00 | 16.00 | opener | opener |
| Health & Welfare | 2.55 | 2.80 | 3.05 | | |
| Pension | 1.25 | 1.90 | 2.50 | | |
| DC 78 FTI | 0.55 | 0.55 | 0.55 | | |
| LMCI | 0.05 | 0.05 | 0.05 | | |
| IUPAT FTI | 0.05 | 0.05 | 0.05 | | |
| Total Package | 20.45 | 21.35 | 22.20 | | |

# DRYWALL FINISHER

## ALL COUNTIES IN THE STATE OF FLORIDA – (Cololo)

| Zone II | 1-Jul-06 | 1-Jul-07 | 1-Jul-08 | 1-Jul-09 | 1-Jul-10 |
|---|---|---|---|---|---|
| Wage (Hand Tools) | 17.00 | 17.50 | 18.00 | opener | opener |
| Wage (Bazooka, Box) | 18.00 | 18.50 | 19.00 | opener | opener |
| Health & Welfare | 3.60 | 3.70 | 3.75 | | |
| Pension | 2.30 | 2.50 | 2.50 | | |
| DC 78 FTI | 0.55 | 0.55 | 0.55 | | |
| LMCI | 0.05 | 0.05 | 0.05 | | |
| IUPAT FTI | 0.05 | 0.05 | 0.05 | | |
| Total Package | 22.55 | 23.35 | 23.90 | | |

**DEDUCTIONS:** Administrative Dues Check-Off in the amount of 3% deduction off of the total weekly gross earnings and window dues of eight dollars ($8.00) per week. Political Action Together is .05 per hour worked.

Political Action Together is $.05 per hour worked.

**CHARGEPERSON:** working up to 5 employees; additional $1.00 per hour; and working 6 or more employees is an additional $1.50 per hour.

**GENERAL FOREMAN:** $1.00 per hour above highest paid charge person.

**ARTICLE 18**

**GLAZIERS**

**WAGES AND FRINGE BENEFIT CONTRIBUTIONS**

**EFFECTIVE JULY 1, 2006 THROUGH JUNE 30, 2009**

As a condition of employment, all glaziers (apprentice through foreman) must participate in an OSHA 10- hour training course. Those members who have a current OSHA 10 hour training certificate must take 10 hours of an elective training course sponsored by District Council 78 JATF and enforced by all Signatory Employers.

# Glaziers – All Counties in the State Of Florida - (GG 1010)

| Journeyperson | 1-Jul-06 | 1-Jul-07 | 1-Jul-08 |
|---|---|---|---|
| Wage | 20.00 | 21.00 | 22.00 |
| Health & Welfare | 3.60 | $.15 to be distributed into fringe benefit contributions | $.15 to be distributed into fringe benefit contributions |
| Pension | 2.45 | | |
| DC 78 FTI | 0.55 | | |
| LMCI | 0.05 | | |
| IUPAT FTI | 0.05 | | |
| Total Package | 26.70 | 27.85 | 29.00 |

| Apprentice | 1-Jul-06 | 1-Jul-07 | 1-Jul-08 |
|---|---|---|---|
| 1st Level (65%) | 13.00 | 13.65 | 14.30 |
| 2nd Level (70%) | 14.00 | 14.70 | 15.40 |
| 3rd Level (75%) | 15.00 | 15.75 | 16.50 |
| 4th Level (80%) | 16.00 | 16.80 | 17.60 |
| 5th Level (85%) | 17.00 | 17.85 | 18.70 |
| 6th Level (90%) | 18.00 | 18.90 | 19.80 |
| 7th Level (95%) | 19.00 | 19.95 | 20.90 |
| Health & Welfare | 3.60 | $.15 to be distributed into fringe benefit contributions | $.15 to be distributed into fringe benefit contributions |
| Pension | 0.10 | | |
| DC 78 FTI | 0.55 | | |
| LMCI | 0.05 | | |
| FTI | 0.05 | | |
| Total Fringe Benefit | 4.35 | 4.50 | 4.65 |

**DEDUCTIONS:** Administrative Dues Check-Off in the amount of 3% deduction off of the total weekly gross earnings and window dues of $7.00 per week. Political Action Together is .05 per hour worked.

**FOREMAN:** working 4 to 10 employees is an additional 1.00 per hour working 10 or more employees; additional 2.00 per hour

**GENERAL FOREMAN:** Additional $3.00 per hour

**TRAVEL:** Employees who drive to and from a job site that is more than fifty (50) miles one way from their residence shall receive twenty-five cents (.25) per mile for all miles beyond the fifty (50) miles both to and from the job site. Employees who necessarily have to be away from home due to distance, job requirements, etc. shall be provided reasonable accommodations at the Employer expense and be paid $25.00 per day for expenses.

## ARTICLE 18

### MARKET RECOVERY

The following market recovery wage and fringe benefit package can apply to "new work opportunities" not likely to be performed by Signatory Employers:

Can apply on: New Construction/Major Alterations, Repaint/Re-Model and Shop work.

**Painter, Drywall Finisher & Wall Cover**

Base Rate:                                                    12.65 per hour

### FRINGE BENEFIT CONTRIBUTIONS & DEDUCTIONS are as follows:

D.C. 78 Health & Welfare Fund  - As per applicable Zone

| | |
|---|---|
| I.U.P.A.T. Pension Fund | 0.50 per hour |
| D.C. 78 JATF | 0.50 per hour |
| LMCI | 0.05 per hour |
| IUPAT JATF | 0.05 per hour |

**DEDUCTIONS:** Administrative Dues Check-Off in the amount of 3% deduction off of the total weekly gross earnings and window dues of $7.00 per week.

**CHARGEPERSON:** working up to 5 employees; additional $1.00 per hour; and working 6 or more employees is an additional $1.50 per hour.

**GENERAL FOREMAN:** $1.00 per hour above highest paid charge person.

### SECTION 2-HOURS

The normal workweek shall consist of five (5) consecutive eight (8) hour days or four (4) consecutive ten (10) hour shifts between 6:00 a.m. and 5:00 p.m., Monday through Saturday.

Overtime shall be paid at the rate of one and one-half (1½) times the hourly rate after ten (10) hours in one day or forty (40) hours in a week.  All work on Sundays shall be paid at the rate of one and one-half (1½) times the hourly rate.

Any work performed on Holidays shall be paid at the rate of double time.

Shift work may be performed at the option of the Employer.  However, when shift work is performed, it must continue for a period of not less than three (3) consecutive days.  Any work starting outside of the 6:00 a.m.-10:00 a.m. window, shall be paid at ten percent (10%) above the regular rate for all hours worked.

The District Council may waive the shift differential pay in an effort to recapture repaint/renovation work opportunities

### SECTION 3-HOLIDAYS

The regular holidays, in this AGREEMENT, shall be named as:

| | |
|---|---|
| Memorial Day | Thanksgiving Day |
| Fourth of July | Christmas Day |
| New Years Day | Labor Day |

There shall be no work on Labor Day.

All work performed on regular holidays shall be double the regular hourly rate.  If a designated holiday falls on Saturday it shall be observed on Friday and if it falls on Sunday it shall be observed on Monday, unless changed by mutual consent.

**General Election Day** in November is a workday with three (3) hours off for working election polls at the direction of District Council #78, but pay for eight (8) hours.  Fringes paid for the hours worked.  If an employee does not work the election polls, it is a normal workday.  Sign up for election polls must be completed at District Council office(s) on Election Day with Employer verification afforded as needed.   (Three hours equivalent at the appropriate wage rate.)

## SECTION 4- ADMINISTRATIVE DUES CHECKOFF

Every Employer signatory to this Agreement hereby agrees to check-off from the total gross wages of any employee employed by such Employer during the term of this Agreement administrative dues in the then current amount specified in the District Council's bylaws and to remit said amount to the Union in the following manner:

a. The Union will notify the Employer in writing of the then current amount of administrative dues specified in the District Council's bylaws, and will submit to the Employer a copy of the applicable bylaw provision upon request.

b. For each payroll period, the Employer will deduct from the wages of each employee the amount specified in the bylaws based on the then current percentage of the total weekly gross pay during said payroll period, and will accumulate said deductions to the end of the month.

c. On or before the 20th day of each month, the Employer will remit to the Union the entire amount of administrative dues due and owing as to each employee for the month previous, together with a list of employees covered hereby and the number of hours worked and total gross pay for each employee during the applicable period.

d. The Employer agrees to withhold Administrative Processing Fees on applicants when requested by the Union and authorized, in writing, by the employee, and remitted as designated by the Union on a monthly basis.

## SECTION 5-OUT OF AREA

When a signatory Employer performs a job within the jurisdiction of a union affiliated with the IUPAT other than the Union signatory hereto and the bylaws of that other union contain a provision for administrative dues or business representative "assessment," the Employer shall check-off from the wages of employees covered by this Agreement and employed on that job administrative dues or business representative "assessment" in the amount stated in that other Union's bylaws, and shall remit said amount to that other Union. In that event, that other Union shall be acting as agent of the signatory Union for the purpose of policing and administering this Agreement. In performing the check off, the procedure specified in Section (2) a-c will be followed, except that it shall be the responsibility of said other Union to notify the Employer in writing of the amount of administrative dues or business representative "assessment" specified in its bylaws, and to submit to the Employer a copy of the bylaws or applicable by-law provision.

When the signatory Employer performs a job within the jurisdiction of a Union affiliated with the IUPAT other than the Union signatory hereto, and the bylaws of the other Union contain no provision for administrative dues or business representative "assessment," the Employer shall continue to be bound by Section (1).

The obligations of the Employer under these Sections shall apply only as to employees who have voluntarily signed a valid dues deduction authorization card.

On or before the 20th day of each month, the Employer will submit to the Union a list of all employees covered by the Agreement who has not signed a dues deduction authorization card, together with the number of hours worked by each such employee during the month previous.

## SECTION 6-VOLUNTARY PAYROLL DEDUCTION OF POLITICAL CONTRIBUTIONS

Employers signatory to this Agreement hereby agree to honor authorizations for check-off of political contributions from employees who are union members in the following form, and to forward all contributions and reports on contributions on or before the 20th day of each month for the previous work month.

## AUTHORIZATION FORM FOR CHECK-OFF OF POLITICAL CONTRIBUTIONS

I hereby authorize my Employer to deduct from my pay the sum of five (.05) cents for each hour that I receive pay (or from each regular pay check _____ dollars weekly), as a contribution to the Political Action Together-Political Committee (PAT-PC) of the International Union of Painters and Allied Trades. I further authorize and direct the Employer to send to the "Combined National Fund," on or before the 20th day of each month. I further authorize and direct the Employer to honor any instruction that it may receive from a duly authorized representative of PAT-PC concerning a change in mailing or payment instructions relating to this contribution, should it occur.

This authorization is voluntarily made based on my specific understanding that the signing of this authorization card and the making of these voluntary contributions are not conditions of membership in the Union or of employment by my Employer; that I may refuse to contribute without reprisal; that the PAT-PC and the AFL-CIO COPE are engaged in joint fund raising and use the money they receive for political purposes, including but not

limited to making contributions to and expenditures for candidates for federal, state and local offices and addressing political issues of public importance; and that the guideline amount indicated above is only a suggestion and I may contribute more or less and will not be favored or disadvantaged by the Union or my employer for doing so. This authorization shall remain in full force and effect until revoked in writing by me.

Name_____

Signature_____    SSN:_____

## ARTICLE 19
## HIRING PROCEDURES
### SECTION 1.

A. The employer agrees to hire employees and to adhere to the following exclusive referral system:

1. The District Council shall register and will refer all qualified applicants for employment for the Painting, Wall covering, Drywall Finishing and Sign Painting and Glass/Glazing industries, for all work to be performed and covered under this Agreement. The District Council will be the first source of referrals for qualified applicants for employment and will furnish the Employer upon request with the required number of qualified employees needed that are registered on the out-of-work list posted at the District Council Office(s).

2. The Selection of qualified applicants for referral to jobs shall be on a non-discriminatory basis and shall not be based on, or in anyway affected by, UNION membership, by-laws, rules, regulations, constitutional provisions, or any other aspect or obligations or UNION membership policies or requirements.

3. Employers will request an employee by contacting the UNION office(s). The Employer may request by name and up to fifty percent (50%) of the work force being hired providing said employee has worked for the employer within the last ninety (90) days of their request.

4. When the Employer requests a qualified applicant with special skills and abilities, the Union shall refer, to the best of their ability, such employee who is qualified to perform the work.

5. The Employer retains the right to reject any job applicant referred by the Union at any time for just cause, as long as it does not interfere with the members' rights and responsibilities as a member of IUPAT.

6. If the Union is unable to furnish qualified and experienced personnel to the designated job site within forty-eight (48) hours after a referral request is made by the Employer, then the Employer may seek employees from whatever source is available, provided that the Employer pays the current rate of pay and benefits provided herein, with notification of such hiring to the District Council office.

7. All employees are required to receive the eight hour OSHA refresher course prior to each duration under this agreement (yearly) in order to be referred for employment.

## ARTICLE 20
## DISTRICT COUNCIL #78 FINISHING TRADES INTSITUTE
### SECTION 1.

The District Council #78's FINISHING TRADES INSTITUTE is hereby established for the sole purpose of training and educating apprentices, utility employees and journeypersons, the fund shall be governed and controlled by the Board of Trustees of District Council #78's FINISHING TRADES INSTITUTE and will establish eligibility requirements for all applicants for apprenticeship. Terms of apprenticeship shall be described in the Standards of the Training Committee(s).

1. The Employer hereby irrevocably designates as its representatives on the Board of Trustees of the International Fund (IUPAT-FTI) such Trustees as are now serving, or who will in the future serve, as Employer Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors, as provided for in the aforesaid Trust Indenture.

(a) The Union hereby irrevocably designates as its representatives on the Board of Trustees of the International Fund (IUPAT-FTI) such Trustees as are now serving, or who will in the future serve, as Labor Trustees, together with their successors, as provided for in the aforesaid Trust Indenture.

(b) The parties hereto further agree to be bound by all actions taken by the Trustees of the International Fund (IUPAT-FTI) pursuant to the said Agreement and Declaration of Trust.

2. All contributions shall be made at such time and in such manner as the Trustees require, and the Trustees shall have the authority to have a Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the FINISHING TRADES INSTITUTE Fund.

**SECTION 2.**

The Employer hereby agrees to make contributions and deductions at the then current amounts as set forth in Article 18 for all hours worked and submit same to District Council #78's FINISHING TRADES INSTITUTE Fund.

**SECTION 3-CONDITIONS FOR WORKING APPRENTICES SHALL BE:**

1. All apprentices shall be trained in accordance with both Federal and State Apprentice Regulations.

2. Each apprentice, upon indenture by the Apprenticeship Committee shall be issued an identification card signed by the Director/Coordinator of the Apprenticeship Committee and the Apprenticeship Committee shall keep said card on file. The card is to show the apprentice's name; the date of beginning of their apprentice ship, the Federal Government identification number and the signature of the Apprentice.

3. Any apprentice employed will be indentured within 30 days of the date employed. He or she at all times during the work shift will work under the supervision of a journeyperson and attend classes in related instruction for a period of and at a place designated by the FINISHING TRADES INSTITUTE Committee(s) and Trustees. All Employers agree to and to support the committee(s) and Trustees obligations and decisions on training and educating apprentices.

**SECTION 4.**

All signatory contractors shall comply with the State of Florida Public Work Act, #446.011-446.092 and Federal Act, 29 Code of Federal Regulations-Part 30.

**SECTION 5.**

Each Employer shall employ and train apprentices at a ratio of one (1) apprentice to every three (3) journeypersons employed by the Employer, with approval of the District Council such ratio may be increased to one (1) apprentice to every one (1) journeyperson.

**SECTION 6-APPRENTICE WAGES, FRINGE BENEFITS AND DEDUCTIONS**

Apprentices shall be paid a percentage of the appropriate commercial journeyperson's Base Rate with all then current fringe benefit contributions and deductions except IUPAT Pension/Annuity Fund, which will be paid at .10 per hour worked.

Apprentices shall serve a four (4) year apprenticeship and shall be paid as follows. First six (6) months entry level and thereafter the "appropriate" percentage of journeyperson's four (4) year base rate as follows:

| | | | |
|---|---|---|---|
| 1st 6 months | 65% | 4th 6 months | 80% |
| 2nd 6 months | 70% | 5th 6 months | 85% |
| 3rd 6 months | 75% | 6th 6 months | 90% |
| 7th and 8th 6 months period | (4th year) | 95% | |

Steel, Swing/Stage, Tanks, Lead/Asbestos Abatement, Power Facilities, Catalyzed Epoxies, Urethanes, HIPAC Coatings, Etc; additional .50 per hour.

**SECTION 7-Utility Employees**

Utility employees are workers having basic qualifications to perform work covered in this agreement; a wage rate not lower than 60% and no more than 90% will be paid at the base rate of a journeyperson for the zone; at a ratio of three journeypersons to one utility worker.

There will be no fringe benefits paid on any utility employee registered with the District Council for the first 1,000 hours of their employment; all deductions will apply. After 1,000 hours of employment; all fringe benefits shall be paid per Article 18, of the appropriate Zone of this agreement.

**SECTION 8.**

The Employer hereby irrevocably designates as its representatives on the Board of Trustees such trustees as are now serving, or who will in the future serve, as employer trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the trustees pursuant to the said Agreement and Declaration of Trusts, as amended from time to time.

If an Employer fails to make contributions to the DC 78 FINISHING TRADES INSTITUTE Fund within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure the compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and

the Employer shall be liable for all costs of collection of the payments due together with the attorney's fees and such penalties as may be assessed by the trustees.

## ARTICLE 21

## JOINT TRADE BOARD

### SECTION 1-JURISDICTION AND PROCEDURES

A. All complaints, disputed, controversies, claims or grievances (hereinafter referred to as a dispute) arising between the parties to the Agreement involving questions of interpretation, application, or breach of any part of this Agreement, or arising out of the contractual relations between the parties and their respective members shall, in the first instance, be referred to committee or committees appointed for this purpose by the parties hereto. If they are unable to solve the dispute, it shall be referred to a Joint Trade Board. The Joint Trade Board shall consist of a minimum of two (2) members appointed by the Council and two (2) members who are Signatory Employers. It is agreed to add equal portions along with any other Employer the Union may recognize, the majority decision of which shall be final and binding upon the parties to this Agreement.

The Joint Trade Board shall meet within five (5) working days upon the request of either party to this Agreement.

Decisions of the Joint Trade Board shall be rendered in three (3) working days after it convenes. The Employer may appeal the decision(s) to the Joint Trade Board within three (3) working days of receipt of the decision. If the Employer refuses to comply with a final and binding decision issued at Joint Trade Board level, the District Council will have the right to direct employees of such Employer covered by this Agreement to refrain from working for said Employer. Should the Joint Trade Board be unable to reach a resolution of the dispute and render a decision within five (5) working days, either of the parties may request the American Arbitration Association to submit a panel of Arbitrators from whom the parties shall select an Impartial Chairman in accordance with the Rules and Regulations of the American Arbitration Association to hear the dispute. The decision of the Impartial Chairman shall be final and binding upon all parties of the proceedings and to this Agreement.

During the pendency of the Joint Trade Board's decision, there shall be no cessation of work of any type or disruption, nor shall the Employer lock out any employee.

If an Employer fails to comply with an Arbitration Award within forty eight (48) hours after it has been rendered, the Union shall have the right, aside from other legal remedies available to it, to direct the employees of such Employer covered by this Agreement to refrain from working for such Employer as long as he/she has failed to comply with the Arbitration Award, and such action by the Union and the employees shall not be considered a breach or violation of this Agreement.

**Arbitration.** Each party shall pay one-half (1/2) the costs of arbitration including administrative fees and the cost of an arbitrator. This shall not include the legal fees of any party using the services of an attorney or any other professional service, which shall be the responsibility of the party (s) engaged.

### B. BETTERMENT OF THE INDUSTRY

ALL matters considered beneficial to the Industries, covered herein, not presently provided for in this agreement, shall be referred to the Joint Trade Board for consideration and appropriate action for the betterment of the industry(s).

## ARTICLE 22

## TRUST FUNDS AND CONTRIBUTIONS

### SECTION 1.

### A. FRINGE BENEFIT CONTRIBUTIONS

No later than the twentieth (20) day of each and every month the Employer shall mail to the Trustees of their designated depository, a check or checks being made payable as designated to cover payment for the previous month to the Health and Welfare Fund, Pension Fund, FINISHING TRADES INSTITUTE Fund, Political Action Fund, Administrative Dues Check-Off and any other fund that is established within this Agreement. In addition, the Employer will properly complete and mail such forms and records as designated by the Trustees of said Fund. Each or any of the Funds referenced in this Agreement may engage a certified public accounting firm to periodically audit the books, payroll and wage records of any contributing Employer (s) for the purpose, of verifying contributions and deductions due and owing to the respective Fund(s) and/or liabilities for contributions due and owing to such Fund.

17

In the event such audit discloses for any period a deficiency in the payments reported and paid/not paid and the outstanding deficiency owed is greater than 5% of the amount originally reported for such period under this Agreement, the cost of the audit will be borne by the Employer.

## B. BONDS/SECURITY FOR FUND PAYMENTS

A surety bond may be required of not less than 5,000 dollars and no more than 25,000 dollars (at the discretion of D.C. #78) may be required in guaranteeing payment of any wages, fringe benefits and deductions by any signatory Employer. The original bond will be posted at the D.C. office.

In lieu of a "bond", a "letter of credit" or certified check to be held in escrow (no interest to be paid) is acceptable. The amount of which may be adjusted for new Employers at the discretion of the D.C.

The District Council and/or Trustee's may require accelerated payments if any Employer(s) payments are irregular.

## SECTION 2-THE INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES FINISHING TRADES INSTITUTE FUND (IUPAT-FTI)

The Agreement between the Employer(s) and Union parties to this agreement regarding payments to the International Union of Painters and Allied Trades FINISHING TRADES INSTITUTE (IUPAT-FTI) is as follows:

1.Commencing with the first day of **July, 2006** and for the duration of this Agreement, and any renewals or extensions thereof, the Employer agrees to make payments to the International Union of Painters and Allied Trades FINISHING TRADES INSTITUTE Fund (IUPAT-FTI) for each employee covered by this Agreement, as follows:

a) For each hour or portion of an hour for which an employee receives pay, the Employer shall make a contribution of five cents (.05) to the above named Apprenticeship Fund.

b) Contributions shall be paid on behalf of any employee starting with the employee's first hour of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, journeypersons, trainees and utility employees.

c) The payments to the Apprenticeship Fund required above should be made to the "International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund (IUPAT-JATF)" which was established under an Agreement and Declaration of Trust, effective May 1, 1995. The Employer hereby agrees to be bound by and to said Agreement and Declaration of Trust as though it had actually signed the same.

2) If an Employer fails to make contributions to the International Union of Painters and Allied Trades FINISHING TRADES INSTITUTE Fund (IUPAT-FTI) within twenty (20) days after the date required by the Trustees, such failure shall be deemed a violation of this agreement, and the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collecting the payments due together with the attorney's fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause, which may be provided or set forth elsewhere in this Agreement.

5) The Apprenticeship Plan adopted by the Trustees of said Apprenticeship Funds shall at all times conform with the requirements of the Internal Revenue Code and other applicable laws and regulations so as to enable the Employer at all times to treat contributions to the Apprenticeship Fund as a deduction for income tax purposes.

## SECTION 3- PAINTERS AND ALLIED TRADES LABOR-MANAGEMENT COOPERATION INITIATIVE.

1. Commencing with the first day of **July 2006** and for the duration of the Agreement, and any renewals or extension thereof, the Employer agrees to make payments to the Painters and Allied Trades Labor Management Cooperation Initiative ("Fund") for each employee covered by this Agreement, as follows:

a) For each hour or portion thereof, for which an employee receives pay, the Employer shall make a contribution of five cents (.05) to the Fund.

b) For the purpose of this Article, and wherever similar language is used in this Agreement, each hour paid for, including hours attributable to show-up time and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

c) Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, helpers, trainees, and probationary employees.

2. The Employer and Union signatory to this Agreement agree to be bound by and to the, Agreement and Declaration of Trust, as amended from time to time, establishing the Fund.

a) Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

3. All contributions shall be made at such time and in such manner as the Trustees require, and Trustees may at any time conduct an audit in accordance with the Agreement and Declaration of Trust.

4. If an Employer fails to make contributions to the Fund within twenty days (20) after the date required by the Trustees, The Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due, together with the attorney's fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause, which may be provided or set forth elsewhere in the Agreement.

## SECTION 4 PAINTERS AND ALLIED TRADES INTERNATIONAL INDUSTRY PENSION FUND

The only agreement between the Employer(s) and the Union parties to this Agreement regarding pensions or retirement for employees covered by this Agreement is as follows:

1. Commencing with the 1st day of July 2006, and for the duration of the Agreement, and any renewals or extension thereof, the Employer agrees to make payments to the PAT International Industry Pension Fund for each employee covered by this Agreement, as follows:

a) For each hour or portion thereof for which an employee receives pay Employer shall make a contribution as set forth in Article 18 hereto the above named pension fund the amount specified in Article 18 is to be allocated to the PAT International Industry Pension Plan and the amount specified in Article 18 be allocated to the PAT International Industry Annuity Plan. All apprentices registered with the District Council 78 JATF will have a Pension contribution of .10 per hour for each hour worked.

b) For the purposes of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

c) Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, helpers, trainees, and utility employees.

d) The payments to the Pension Fund required above should be made to the PAT International Industry Pension Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though he had actually signed the same.

2) All contributions shall be made at such time and in such manner, as the trustees require; and the trustees may at any time conduct an audit in accordance with Article V, Section 6 of the said Agreement and Declaration of Trust.

3) The Pension Plan and Annuity Plan adopted by the trustees shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the PAT International Union and Industry Pension Fund as a deduction for income tax purposes.

## SECTION 5 DISTRICT COUNCIL 78 HEALTH & WELFARE FUND

A. The Employer agrees to be bound by all provisions set forth in the Agreement and Declaration of Trust, and all amendments thereto, governing establishment and operation of the I.U.P.A.T. District Council #78 Welfare Fund. The Trust Agreement provides, interalia, for the receipt of contributions by the Welfare Fund for the purpose pf providing group health, medical surgical, disability and other related welfare benefits to eligible workers and their families, in such form and amounts as the Trustees of the Welfare Fund may determine in conformity with the discretion vested in them under provisions set forth in the Trust Agreement. The Employer agrees to contribute for Employees covered by this Agreement to the Welfare Fund in the manner provided herein, in the then current amounts and for the periods as set forth in Article 18 for each hour worked.

B) The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the Agreement and Declaration of Trust.



# IUPAT DISTRICT COUNCIL 78
## MEMORANDUM OF UNDERSTANDING
## PROJECT LABOR AGREEMENT

WHEREAS, the undersigned parties hereto desire to enter into a written agreement by and between themselves to govern the terms and conditions of employment of persons represented for purposes of collective bargaining by the International Union of Painters and Allied Trades ("IUPAT") District Council No. 78 ("District Council 78") who perform work within the work and geographical jurisdiction of the IUPAT District Council 78; and,

WHEREAS, the undersigned parties also desire to enter into and assent to be bound by and signatory to the terms and conditions of the current Collective Bargaining Agreement, including any extensions or renewals thereof and any amendments, changes and other modifications thereto (hereafter collectively referred to as the "Agreement"), entered into by and between the IUPAT District Council 78 and its signatory employers ("Signatory Employers") subject only to the express conditions and limitations thereto, and for the specific project(s), as set forth herein below,

NOW, THEREFORE, in consideration of the covenants, promises, and representations set forth herein, effective on the date last set forth below, the parties mutually agree and contract as follows:

Sashco Security, Inc.    , as a Signatory Employer, agrees and assents to be bound by and signatory to the terms and conditions of the current Agreement that include but not limited to the then current wages, fringe benefit amounts and deductions; entered into by and between the IUPAT District Council 78 and its Signatory Employers subject only to the terms, conditions and limitations thereto, and for the specific project(s), as expressly set forth herein below.

D.C. 78 MOU PAGE 1-2

This Memorandum shall be effective and in force only on the specific project(s) or job(s) listed hereafter and for the duration thereof:

a.   NAS Pensacola Aviation Rescue Swimmers School            ;

b.   Physical Fitness Center                                  ;

c.   Visitors Quarters                                        .
(specify each job by name and physical address and insert "N/A" for unused lines)


IN WITNESS WHEREOF, the parties have caused this Memorandum to be duly executed, in duplicate originals, by an authorized officer, owner or agent for each as identified effective on the _1st_ day of _February_ , 20 _07_ .


_Tim Maitland_ (signature)
**Tim Maitland**
**Business Manager/Secretary-Treasurer**

_2/5/07_
**Date**

**IUPAT District Council 78**

_William J. Wagner_ (signature)
**Employer**
_Sashco Security Inc._

_Vice - President_
**Title**

_2/1/07_
**Date**

_William J. Wagner_
**Print Name/Title of Employer/Agent**

D.C 78 MOU  PAGE 2-2
December 2004

**ADDENDUM TO THE**
**PROJECT LABOR AGREEMENT**
**BETWEEN**
**IUPAT DISTRICT COUNCIL 78**
**&**
**SASHCO SECURITY INC.**

The IUPAT District Council 78 only binds Sashco Security Inc. to the following project:

NAS Pensacola Aviation Swimmers School, Physical School, Visitors Quarters.

The following subcontractors are not subject to this IUPAT district council 78 Project Labor Agreement.

Kaiwall, Rayford and Associates (REP) SCOPE: Translucent Panels, Super Sky-SCOPE: Skylight.


_William J. Wogan_
Employer Signature

_T.D. Marlin_
BMST/Signature

_2/1/07_
Date

_2/8/07_
Date



This Memorandum shall be effective and in force only on the specific project(s) or job(s) listed hereafter and for the duration thereof:

a. __NAS Pensacola Aviation Rescue Swimmers School_____;

b. __Physical Fitness Center_____;

c. __Visitors Quarters_____;
(specify each job by name and physical address and insert "N/A" for unused lines)

IN WITNESS WHEREOF, the parties have caused this Memorandum to be duly executed, in duplicate originals, by an authorized officer, owner or agent for each as identified effective on the _1st_ day of __February__, 20_07_.

**Tim Maitland**
**Business Manager/Secretary-Treasurer**

__2/5/07__
**Date**

**Employer**
Sashco Security Inc.

__Vice-President__
**Title**

__2/1/07__
**Date**

**IUPAT District Council 78**

__William J. Wagner__
**Print Name/Title of Employer/Agent**

D.C 78 MOU  PAGE 2-2
December 2004

## ARTICLE 26

### IUPAT NOT A PARTY TO THIS AGREEMENT

It is understood and agreed by and between the parties to this Agreement that, by approving this Agreement pursuant to provisions set forth in the IUPAT General Constitution, neither the International Union of Painters and Allied Trades, AFL-CIO, CLC ("International Union") nor any of its officers, agents, employees or representatives shall in any manner:

1. Be made the subject of any duty or liability whatsoever arising from the terms and conditions of this Agreement.

2. Be held liable with respect to any claims, causes of action or liabilities, relating to the application or interpretation of the terms of this Agreement, or the actions of the parties in relation thereto; and

3. Be construed as parties to this Agreement.

4. The parties further acknowledge that the International Union shall not, in any manner, incur any responsibilities, duties or liabilities under this Agreement, by contract or by operation of law, that result from the exercise of the International Union's duty, pursuant to its General Constitution, to approve this Agreement as to form.

## ARTICLE 27

### CLAUSES AND DURATION

### SECTION 1.

This Agreement shall commence on the 1st day of July, 2006 and shall continue in full force and effect through June 30, 2011, the anniversary date, and shall be automatically renewed from year to year thereafter until terminated or modified by either party by written intent to terminate or modify mailed or delivered to the other party not less than sixty (60) days nor more than ninety (90) days prior to the anniversary date of this Agreement or prior to the anniversary date of any renewal provided, however, that any change or modification can be made at any time by mutual consent.

It is understood and agreed that the duration for the Glazing Employers of this Agreement is for a three (3) year term and that the wage and fringe benefit packages listed in Article 18 of this Agreement are effective July, 1st 2006 through June 30, 2009. Notice to open or terminate will come under all notices as applicable to the notices required by NLRB requirements for timeliness of a continuing a bargaining relationship, with District Council 78 IUPAT.

In witness whereof: the parties hereto have caused this Agreement and do hereby accept and adopt this Agreement in its entirety and agree to be bound hereto, to be duly executed and intending to be legally bound and in effect the 1st day of July, 2006 and for the term expressed herein.

_____    _____

**BUSINESS MANAGER/SECRETARY-TREASURER:**    **DATE**
**IUPAT DISTRICT COUNCIL 78**


_____

**COMPANY NAME**

_____

**COMPANY ADDRESS**

_____  _____  _____

**EMPLOYER NAME (PRINT)**    **EMPLOYER SIGNATURE**    **DATE**

21

# AGREEMENT

### Between

### And

### IUPAT DC 1
### GLAZIERS, ARCHITECTURAL METAL and
### GLASS WORKERS LOCAL UNION NO. 930

Effective:    July 1, 2005 to June 30, 2010

RECEIVED

FEB 2 4 2006

G.S.T.

FEB 2 8 2006

ARTICLE

Page

| 1 | Purpose | 2 |
| 2 | Recognition | 2 |
| 3 | Hours of Work and Overtime | 3 |
| 4 | Remodel, Tenant Finish and New Work if Required | 3 |
| 5 | Management Rights | 4 |
| 6 | Pay Conditions | 4 |
| 7 | Travel and Subsistence | 5 |
| 8 | Apprentices | 6 |
| 9 | Rate of Pay | 7 |
| 10 | Vacations and Holidays | 9 |
| 11 | Time Records | 9 |
| 12 | Glass Handling | 9 |
| 13 | Qualifications | 9 |
| 14 | Picket Line | 10 |
| 15 | Shop Steward | 10 |
| 16 | Savings Clause | 10 |
| 17 | Tools | 11 |
| 18 | Accident | 11 |
| 19 | Drugs and Alcohol | 11 |
| 20 | Union-Security | 12 |
| 21 | Grievance | 13 |
| 22 | Equal Treatment | 13 |
| 23 | Term of Agreement | 14 |
| | | 15 |



EXHIBIT

2

# AGREEMENT

## Between

## And

## IUPAT DC 1
## GLAZIERS, ARCHITECTURAL METAL and
## GLASS WORKERS LOCAL UNION NO. 930

Effective: July 1, 2005 to June 30, 2010

THIS AGREEMENT is made and entered into this ____day of_____ by and between
_____ hereinafter referred to as the "Employer" and GLAZIERS, ARCHITECTURAL METAL AND GLASS WORKERS LOCAL UNION NO. 930, hereinafter referred to as the "Union" (affiliated with International Brotherhood of Painters and Allied Trades, AFL-CIO).

## ARTICLE 1
## PURPOSE

It is the intent and purpose of the parties hereto that this Agreement covering hours of work and conditions of employment will be instrumental in promoting a harmonious relationship between the Employer, its employees and the Union to the end that the Employer may rightfully expect, that in return for a negotiated rate of compensation, the highest level of productivity at all times.

## ARTICLE 2
## RECOGNITION

Section A.     The Employer recognizes the Union as the sole and exclusive bargaining representative for all Glaziers, Architectural Metal and Glass Workers, Industrial Workers, and for all employees performing work covered by this Agreement on all present and future job sites within the territorial jurisdiction of the Union.

Section B.     On any contract work accepted by the Employer in connection with construction jobs within the territorial jurisdiction of Local Union #930, which obligates the Employer to provide job site labor, the Employer agrees that the Union shall have jurisdiction over the installation, repair and removal of the following kinds and type of work and/or materials.  All kinds and types of glass, whether or not framed;  all types of aluminum, bronze or stainless steel materials used for facing and/or framing of building store front construction, etc.; all metal doors, glass doors, metal door frames, welding, caulking, louvers, and any incidental work in connection therewith; also the installation of any and all other work or materials recognized by the glazing industry as glazier's work.  Bevelers, Silverers, Scratch Polishers, Sandblasters, Flat Glass Wheel Cutting, Mitre Cutters, Engravers, Hole Drilling Machine Operators, Belt Operators, Belt Machines, and all machines used in the processing of glass, automatic beveling, silvering, polishing, grinding, unpacking and racking of glass, fused glass, glass cleaners in shops, mirror cleaners and mirror strippers, the selecting, cutting, preparing, designing, of art glass, fused glass, thick facet glass in concrete and cementing of art glass, assembly and/or removal of all art glass (in the shop).  Engraving, drafting, etching, embossing, designing, sand blasting, chipping, glass bending, glass mosaic workers, cutters of all flat and bent glass and glass shade workers and auto glass workers.

Section C.     The Employer and the Union agree that there shall be no discrimination against any employee, or applicant, because of race, color, creed, sex, age, disability or national origin.

Gender:          It is understood that wherever there is reference to gender within the articles of this agreement, such reference shall include either sex.

## ARTICLE 9
## RATE OF PAY

Section A.     Effective: July 1, 2005, Journeyman Glaziers' and Architectural Metal Workers' total money package shall be $32.55 per hour.  This wage includes any and all fringe benefit payments and apprentice trust contributions.

Effective:     July 1, 2006, Journeyman Glaziers' and Architectural Metal Workers' total money package shall be $33.05 per hour. This wage includes any and all fringe benefit payments and apprentice trust contributions.

Effective:     July 1, 2007, Journeyman Glaziers' and Architectural Metal Workers' total money package shall be $33.55 per hour. This wage includes any and all fringe benefit payments and apprentice trust contributions.

Effective:     July 1, 2008, Journeyman Glaziers' and Architectural Metal Workers' total money package shall be $34.30 per hour. This wage includes any and all fringe benefit payments and apprentice trust contributions.

Effective:     July 1, 2009, Journeyman Glaziers' and Architectural Metal Workers' total money package shall be $35.05 per hour. This wage includes any and all fringe benefit payments and apprentice trust contributions.


Section B.     The total money package for Glass Workers will be eighty-six percent (86%) per hour of the Glaziers hourly wage rate, which includes any and all fringe benefit payments and apprentice trust contributions as outlined in appendix A.

Those employees will be able to do anything a Journeyman can do except erection of new aluminum and glass work away from the shop.  Erection of new aluminum and glass work away from the shop can be performed by a Glass Worker only when accompanied by a Journeyman Glazier.

Section C.     Any time the Davis/Bacon or other prevailing wage rates fall below the rates listed in this agreement, the Employer may pay based on the lower rate.

Section D.     Effective July 1, 2005, the taxable money package for an Industrial Worker will be $11.30 per hour plus the hourly contribution for the health and welfare plan.  Industrial workers will be eligible only for the dues check-off, vacation trust and the Health and Welfare Trust as outlined in appendix A.

The Industrial Worker may first serve a ninety (90) day probationary period, not in the direct employ of the employer during which the Employer may delay payment to the Vacation, Health and Welfare Fund and Union dues.  At it's conclusion, the Industrial Worker must then join the Union.  It shall be the responsibility of the Employer to promptly notify the Union of the date of hire and to provide all information necessary for the Union to track the Employee.  The minimum rate of pay during this ninety day period shall be $10.28 per hour.

An Industrial Worker may perform the following work:

1.     The shop assembly of storm sash, preglazed windows, shower doors, and patio doors.
2.     Fabrication of jalousie glasses and counter dividers where automatic machines are used for polishing edges of glass.
3.     Fabrication of Insulating Glass Units.
4.     Driving of Company vehicle (loading and unloading).
5.     Delivery and distribution of material to various stock piles on the job site.
6.     Shop Warehousing.
7.     Clean-up - to include shop and job site removal of trash. Distribution and pick-up of power cords on the job site.
8.     In-Shop preparation and assembly of accessories and the screw boss systems assembly of framing. Accessories include all miscellaneous items except stock length extrusions.
9.     Job site assistance in the application of setting blocks, baffles, water deflectors, pulling weather stripping, measuring, installing vinyl     and tape.
10.    Assemble framing or glazing accessories during the presence of Journeyman on the job.
11.    On two or three man crews, the Industrial Worker can assist the Journeyman Glazier or Glass Worker in the completion of their job.

7

12.    Industrial Workers can perform anything they performed under the old contract as well as the above listed duties.

Section E.    Administrative Dues Check-Off

(1)  The Employer agrees to deduct, each pay period, from the pay of each employee covered by this Agreement, such percentage of gross earnings, including travel time and overtime, commencing from the first hour of employment, as is certified by the Union from time to time as Union dues.  Such dues deductions shall be based upon a written assignment as required by the Labor Management Relations Act.

(2)  The Employer will remit the  Administrative Dues Check-Off deducted pursuant to such assignment, to be due on or before the tenth (10th) and delinquent after the twenty-fifth (25th) day of the month following deductions, with a written statement of the names of the employees for whom deductions were made, together with amounts deducted.  Such Administrative Dues Check-Off deductions will be remitted to the Union or to the Agency designated by the Union for the collection of such deductions.

(3)  The  Union will hold harmless the Employer and Individual Employers against any claim which may be made by any person by reason of deduction of Administrative Dues Check-Off pursuant to the above written assignment, including the cost of defending against any such claim.

Section F.    Integration of Agreement and Declaration of Trusts

(1)  The Employer agrees to contribute to the Agreement and Declaration of Pension Trust; the Agreement and Declaration Health and Welfare Trust; and the Agreement and Declaration of Vacation Trust, and accepts and agrees to be bound by and comply with all terms and conditions of said Trusts as they exist as of the date of this Agreement and as they may be amended from time to time, and to be bound by and comply with such rules and regulations as may be promulgated to carry out the provisions of said Trusts.

(2)  The Employer agrees to contribute to the Apprentice Trust Agreement and accepts and agrees to be bound by and comply with all terms and conditions of said Agreement, and as it may be amended from time to time, and to be bound by and comply with such rules and regulations as may be promulgated to carry out the provisions of such Agreement.

(3)  (a)  Commencing with the 1st day of July, 2002, and for the duration of this Agreement, and any renewals or extension thereof, the Employer agrees to make payments to the Painters and Allied Trades Labor-Management Cooperation Fund and the Painters and Allied Trades Joint Apprentice Training Fund, for each employee covered by this Agreement, as Follows:

(b)  For each hour or portion thereof, for which an employee receives pay, the Employer shall make a contribution of .05 to each Fund.

(c)  For the purpose of this Article, each hour paid for including hours attributable to show up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(d)  Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement.

(1)  However, no contributions shall be made on behalf of Industrial Workers.

(e)  The Employer and Union signatory to this Agreement agree to be bound by and to the Agreement and Declaration of Trust, as amended from time to time, establishing the Fund.

(2)  The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

(3)  All contributions shall be made at such time and in such manner as the Trustees require; and the Trustees may at any time conduct an audit in accordance with the Agreement and Declaration of Trust.

(4)  If an Employer fails to make contributions to the fund within twenty days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney fees and such penalties as may be assessed by this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

## ARTICLE 23
## TERM OF AGREEMENT

THIS AGREEMENT shall continue in force and effect from July 1, 2005, through June 30, 2010, and shall continue in force and effect from year to year thereafter, unless either party desires to change any of the terms herein, in which case written notice of the desire to change must be served the other party at least sixty (60) days prior to the anniversary date.

IN WITNESS WHEREOF, the parties hereunto have set their hand and seal the        day of          in the year 2005.

FOR THE UNION                                    FOR THE EMPLOYER
GLAZIERS LOCAL 930
IUPAT DC 1

_____                    _____

_____                    _____

_____                    _____

# AGREEMENT

### Between

### and

## GLAZIERS, ARCHITECTURAL METAL and
## GLASS WORKERS LOCAL UNION NO. 930

Effective:     July 1, 2005 to June 30, 2010

**ARTICLE**                                                          **Page**

| 1  | Purpose |  |
|----|---------|----|
| 2  | Recognition | 2 |
| 3  | Hours of Work and Overtime | 2 |
| 4  | Remodel, Tenant Finish and New Work if Required | 3 |
|    |  | 3 |
| 5  | Management Rights | 4 |
| 6  | Pay Conditions | 4 |
| 7  | Travel and Subsistence | 5 |
| 8  | Apprentices | 6 |
| 9  | Rate of Pay | 7 |
| 10 | Vacations and Holidays | 9 |
| 11 | Time Records | 9 |
| 12 | Glass Handling | 9 |
| 13 | Qualifications | 9 |
| 14 | Picket Line | 10 |
| 15 | Shop Steward | 10 |
| 16 | Savings Clause | 10 |
| 17 | Tools | 11 |
| 18 | Accident | 11 |
| 19 | Drugs and Alcohol | 11 |
| 20 | Union-Security | 12 |
| 21 | Grievance | 13 |
| 22 | Equal Treatment | 13 |
| 23 | Term of Agreement | 14 |
| 24 | Attachment #1 | 15 |
| 25 | Attachment #2 | 16 17 |

X _Douglas Gleaton_

Douglas L. Gleaton

Glaziers L.U. #930
DC I

X _William J. Wagner_

William J. Wagner

Sasheo Security Inc.

05/22/2008 09:09 3037779321 IUPAT LU 79 PAGE 03
Case 1:08-cv-00994-EGS Document 1-4 Filed 06/09/2008 Page 7 of 7
Fax sent by : 8584559424 DICK CORP. 21884 02-14-07 16:42 Pg: 14/18

THIS AGREEMENT shall continue in force and effect from February 7, 2007, through February 6, 2008, and shall continue in force and effect from year to year thereafter, unless either party desires to change any of the terms herein, in which case written notice of the desire to change must be served the other party at least sixty (60) days prior to the anniversary date.

IN WITNESS WHEREOF, the parties hereunto have set their hand and seal the 7th day of February in the year 2007.

FOR THE UNION
GLAZIERS LOCAL 930
IUPAT DC 1

FOR THE EMPLOYER

William J. Wagner
Sashco Security Inc.

14

# RESTATED
# AGREEMENT AND DECLARATION OF TRUST

### Establishing the

### International Painters and Allied Trades

### Industry Pension Fund

This AGREEMENT AND DECLARATION OF TRUST is by and between the INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES (hereinafter referred to as the "Union"), and the FINISHING CONTRACTORS ASSOCIATION (hereinafter referred to as the "F.C.A."), and various employers of members of the union who are or may become parties to this Agreement as hereinafter defined (hereinafter referred to as "Employer" or "Employers").

## WITNESSETH:

WHEREAS, the International Union of Painters and Allied Trades, and/or various Local Unions or District Councils of the Union, and Employers have entered into or expect to enter into collective bargaining agreements which provide, among other things, for the establishment of a Pension Fund and prescribe the contributions or payments to be made by the Employers to such Fund; and

WHEREAS, to accomplish the aforesaid purpose, it is desired to establish a Pension Fund as a Trust Fund for receiving contributions and providing benefits for eligible employees; and

WHEREAS, the said Trust Fund is to be known as the "International Painters and Allied Trades Industry Pension Fund"; and

WHEREAS, it is desired to set forth the terms and conditions under which the said Fund is to

36479-3



be established and administered; and

WHEREAS, it has been mutually agreed that the Fund shall be administered by Trustees, and it is desired to define the powers and duties of the Trustees and the nature of benefits to be provided;

NOW, THEREFORE, in consideration of the premises, and the mutual covenants herein contained it is mutually understood and agreed as follows:

## ARTICLE I

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement:

*Section 1.*    AGREEMENT AND DECLARATION OF TRUST. The terms "Agreement and Declaration of Trust" or "Trust Agreement" shall mean this instrument, including any amendments hereto and modifications hereof. This Trust Agreement shall govern the operation of both the International Painters and Allied Trades Industry Pension Plan and the International Painters and Allied Trades Industry Annuity Plan.

*Section 2.*    PENSION FUND. The terms "Pension Fund" or "Fund" shall mean the International Painters and Allied Trades Industry Pension Fund, established by the Trust Agreement and shall mean generally the monies and other items of value which comprise the corpus and additions thereto, contributions payable to the Fund, and amounts received or held for or on behalf of the Trustees under both the International Painters and Allied Trades Industry Pension Plan and the International Painters and Allied Trades Industry Annuity Plan and title to all such monies, and other items of value including contributions owed but not yet received, shall be vested in the Trustees of Fund. The Fund also shall be known as the "IUPAT Industry Pension Fund."

- 2 -

*Section 3.*    PENSION PLAN.  The Term "Pension Plan" shall mean the Rules and Regulations of the International Painters and Allied Trades Industry Pension Plan, and any modification, amendment, extension or renewal thereof. The Pension Plan also shall be known as the "IUPAT Industry Pension Plan."

*Section 4.*    ANNUITY PLAN.  The term "Annuity Plan" shall mean the Rules and Regulations of the International Painters and Allied Trades Industry Annuity Plan and any modification, amendment, extension or renewal thereof. The Annuity Plan shall also be known as the "IUPAT Industry Annuity Plan."

*Section 5.*    TRUSTEES.

(a)    The term "Employer Trustees" shall mean the Trustees appointed by the Employers who are parties to this Agreement.

(b)    The term "Union Trustees" shall mean the Trustees appointed by the Union.

(c)    The terms "Board of Trustees," "Trustees" and "Board" shall mean the Employer Trustees and the Union Trustees, collectively, and shall include their successors when acting as Trustees. Except where "United States" or "Canadian" is used in conjunction with them, the terms "Board of Trustees," "Trustees" and "Board" shall mean United States Trustees in matters involving their competence, or Canadian Trustees in matters involving their competence as set forth in Article IV, Section 1.

*Section 6.*    UNION.  The term "Union" shall mean the International Union of Painters and Allied Trades and its affiliated Local Unions and District Councils.

- 3 -

Section 7    CONTRIBUTING EMPLOYER. The term "Contributing Employer" shall mean any person, company or business organization which is or shall become a party to the Trust Agreement and which has agreed or shall agree in a Collective Bargaining Agreement with the Union to make contributions to the Pension Fund. In the case of an employer having more than one place of business, the term "Contributing Employers" shall apply only to the place of business specifically covered by the Collective Bargaining Agreement requiring contributions to the Pension Fund.

Section 8.    COLLECTIVE BARGAINING AGREEMENT. The term "Collective Bargaining Agreement" shall mean any written labor contract by and between a Contributing Employer and the Union which provides for contributions to this Pension Fund with any and all extensions or renewals thereof and successor agreements thereto.

Section 9.    EMPLOYEE. The term "Employee means: (a) Any person who performs work under a Collective Bargaining Agreement between a Contributing Employer and the Union and for whom the Employer is obligated to make contributions to the Trust; (b) any full-time salaried officer and employee of any Local Union or District Council which is permitted to participate in the Fund in accordance with the Rules and Regulations of the Pension Plan or Annuity Plan; (c) any member of such other class of employees employed by an Employer which is not within the bargaining unit represented by the Union provided that the employee's class is accepted for participation in the Fund in accordance with the Rules and Regulations of the Pension Plan or Annuity Plan. The term "Employee" shall not include any self-employed person, a sole proprietor of or a partner in an unincorporated business, or, unless the Rules and Regulations provide otherwise, a

- 4 -

corporate shareholder who spends less than 50% of his time performing work covered by a collective bargaining agreement.

Section 10.    EMPLOYER CONTRIBUTIONS. The term "Employer Contributions" shall mean payments made or that are required to be made to the Fund, including amounts owed but not yet paid, by a Contributing Employer under the provisions of, or in accordance with, a Collective Bargaining Agreement and the Trust Agreement, or with regard to a Local Union or District Council or special classes of employees of a Contributing Employer, payments to the Fund pursuant to and in accordance with the Rules and Regulations of the Pension Plan and the Annuity Plan. All such Employer Contributions are, and shall be considered as, plan assets from the date on which the hours (whether worked or paid) for which the Contributing Employer is obligated to pay contributions to the Fund accrue, whether or not such Employer Contributions are collected or received by the Fund. No Contributing Employer has any right, title, or interest to any sum payable by the Contributing Employer to the Fund, but not yet paid into the Fund. Title to all Employer Contributions paid into and/or due and owing to the Fund shall be vested in the Trustees of the Fund.

# ARTICLE II

# GENERAL

Section 1.    ESTABLISHMENT OF FUND. As hereby created, the International Painters and Allied Trades Industry Pension Fund shall comprise the entire assets derived from Employer Contributions made or payable to or for the account of this Fund under Collective Bargaining Agreements, together with any and all investments made and held by the Trustees, or monies received or payable to by the Trustees as contributions or as income from investments made and held

- 5 -

by the Trustees or otherwise, and any other money or property, received and/or held by the Trustees for the uses, purposes and trust set forth in this Agreement and Declaration of Trust.

Section 2.    GENERAL PURPOSE. The Fund shall be a Trust Fund and shall be used for the purpose of providing Pension and Annuity Benefits, as decided by the Trustees, and shall further provide the means for financing the expenses of the Trustees and the operation and administration of the Fund, in accordance with this Agreement and Declaration of Trust.

## ARTICLE III

## UNITED STATES TRUSTEES

Section 1.    JOINT ADMINISTRATION.  The operation and administration of the Pension Fund shall be the joint responsibility of the Trustees appointed by the Employers and the Trustees appointed by the Union.

Section 2.    ACCEPTANCE OF TRUSTEESHIP.  The Trustees, by affixing their signatures at the end of this Agreement and Declaration of Trust, agree to accept the Trusteeship and act in their capacities strictly in accordance with the provisions thereof. Each additional or successor Trustee shall execute a written acceptance in a form satisfactory to the Trustees and thereby shall be deemed to have accepted the Trust created and established by this instrument and to have consented to act as Trustee or to have agreed to administer the Trust Fund as provided herein. Such written acceptance shall be filed with the Fund Administrator who shall notify the remaining Trustees of the receipt of such acceptance.

Section 3.    TERMS OF TRUSTEES. Each Trustee shall continue to serve as such until his death, incapacity, resignation, inability to serve pursuant to Section 9 of this Article, or removal,

- 6 -

as hereinafter provided.

Section 4.    The Board of Trustees shall consist of up to 24 Trustees, 12 to be appointed by the Union and 12 to be appointed by the Employers.

Section 5.    UNION TRUSTEES. The Union shall be and is empowered to appoint all Union Trustees.

Section 6.    EMPLOYER TRUSTEES. The F.C.A. shall be and is empowered to appoint all Employer Trustees; provided, however, that the FCA must remain an organization that admits to its membership only 100% Union Signatory Employers in order to maintain its rights hereunder.

Section 7.    REMOVAL OF TRUSTEES. The Union or the F.C.A. may remove any Trustee(s) appointed by it at any time, for any reason, with or without cause.

Section 8.    WHO MAY BE TRUSTEES. At the time of his/her appointment to the Board of Trustees, each Employer Trustee must be signatory to a collective bargaining agreement requiring contributions to this Fund, with a Local Union or District Council in whose geographic jurisdiction its principal place of business is located and such Employer Trustees must also employ an average of twenty-five (25) or more employees. Employer Trustees who satisfy these requirements at the time of their original appointment shall be considered as qualified during their tenure, until removed in accordance with provisions in this Trust. Union Trustees shall be General Officers of the International Union or members of the IUPAT who, in the opinion of the Union, are most likely to conscientiously serve the bests interests of the Fund.

Section 9.    FORM OF NOTIFICATION. In the event any Union Trustees are appointed or removed, a statement in writing by the Union shall be sufficient evidence of the action taken by

36479-3

the Union. In the event any Employer Trustees are appointed or removed, a statement in writing by the Employer or Association empowered to so appoint or remove shall be sufficient evidence of the action taken by said Employer or Association. Any resignation by a Trustee shall be by certified mail, addressed to the office of the Fund.

  *Section 10.*  VESTING OF POWERS AND DUTIES. Any additional or successor Trustee shall, immediately upon his appointment and his acceptance in writing filed with the Trustees, become vested with all the property, rights, powers and duties of a Trustee hereunder with like effect as if originally named as a Trustee and all the Trustees then in office and any Corporate Trustee or Corporate Agent appointed pursuant to Article V, Section 3, of this Trust Agreement and all other necessary persons shall be notified immediately.

## ARTICLE IV

## CANADIAN TRUSTEES

  *Section 1.*  DECISIONS. The Canadian Board of Trustees shall make all decisions, and only such decisions, that affect Canadian participants, retirees and beneficiaries, Canadian Employers and monies contributed by them, and funds maintained in Canada.

  *Section 2.*  APPOINTMENT. The Canadian Board of Trustees shall consist of up to 6 Trustees. The Union may appoint 3 Trustees, 2 of whom shall be Canadian citizens. Canadian Employers may appoint 2 Trustees who shall be Canadian citizens. Employer Trustees of this Fund may appoint 1 Trustee.

  *Section 3.*  REMOVAL. The Union or Employers empowered by this Article to appoint Trustees may remove any Trustee(s) appointed by it or them.

- 8 -

36479-3

*Section 4.*      WHO MAY BE TRUSTEES. Each Employer Trustee must be signatory to a collective bargaining agreement, requiring contributions to this Fund, with a Local Union or District Council in whose geographic jurisdiction his principal place of business is located. Each Employer Trustee must also employ an average of twenty-five or more employees. Union Trustees shall be General Officers of the International Union or members of the IUPAT who, in the opinion of the Union, are most likely to conscientiously serve the bests interests of the Fund.

*Section 5.*      PROCEDURES. The procedures, rights and obligations set forth in Article III, Sections 2, 3, 9 and 10, shall apply to this Board of Trustees.

- 9 -

36479-3

# ARTICLE V

# POWERS, DUTIES AND OBLIGATIONS OF TRUSTEES

*Section 1.*    PROPERTY AND ASSISTANCE. The Trustees are authorized and empowered to lease or purchase such premises, materials, supplies and equipment, and to hire and employ and retain such legal counsel, investment manager or counsel, administrative, accounting, actuarial, clerical and other assistants or employees as in their discretion they may find necessary or appropriate in the performance of their duties and to pay the costs thereof out of the Fund.

*Section 2.*    CONSTRUCTION OF AGREEMENT. The Trustees shall have the power to construe the provisions of this Agreement and Declaration of Trust and the terms used herein and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Contributing Employers, the employees and their families, dependents, beneficiaries and/or legal representatives.

*Section 3.*    GENERAL POWERS. The Trustees are hereby empowered, in addition to other such powers as set forth herein or conferred by law:

(a) to establish and administer a Pension Fund, and Pension and Annuity Plans, on behalf of the Employees referred to in this instrument;

(b) to enter into any and all contracts and agreements for carrying out the terms of this Agreement and Declaration of Trust and for the administration of the Pension Fund and to do all acts as they, in their discretion, may deem necessary and advisable;

(c) to compromise, settle, arbitrate and release claims or demands in favor of or against the Pension Fund or the Trustees on such terms and conditions as the Trustees may deem advisable;

· 10 ·

(d) to establish and accumulate as part of the Pension Fund a reserve or reserves, adequate, in the opinion of the Trustees, to carry out the purpose of such Trust;

(e) to pay out of the Pension Fund all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Fund or any money, property, or securities forming a part thereof;

(f) to make appropriate allocations of common administrative expenses and disbursements shared or to be shared with any other Plan or Fund;

(g) to receive contributions or payments from any source whatsoever to the extent permitted by law;

(h) to invest and reinvest the Pension Funds in any type of investments and to take any and all action with respect to holding, buying, selling or maintaining such investments as they, in their sole discretion, may deem appropriate;

(i) to procure a group annuity contract or contracts in accordance with the Insurance Code of the District of Columbia for the purpose of providing some or all of the benefits to be provided under this Pension Fund and/or appoint a bank or banks or trust company or trust companies to be designated as (1) "Corporate Trustee," and to enter into and execute a trust agreement or agreements with such bank or banks or trust company or trust companies, to provide for the investment and reinvestment of assets of the Pension Fund with such other provisions incorporated therein as may be deemed desirable in the Trustee's sole discretion for the proper management of the Pension Fund and without limit with respect to the powers which the Trustees may grant to such Corporate Trustee, in such agreement to the extent permitted by law; or as (2) "Corporate Agent";

- 11 -

(j) to do all acts, whether or not expressly authorized herein, that the Trustees may deem necessary or proper for the protection of the property held hereunder;

(k) to do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish to the general objective of enabling the employees to obtain pension and annuity benefits in the most efficient and economical manner.

*Section 4.*    COMPENSATION.  The Union and Employer Trustees shall not receive compensation for the performance of their duties.  However, they may be reimbursed for reasonable out-of-pocket travel and incidental expenses in connection with their duties as Trustees.

*Section 5.*    AUTHORITY TO ENTER INTO AGREEMENTS WITH OTHER TRUSTEES.  The Trustees are hereby given authority to enter into agreements with Trustees of other Pension Funds to which the Union is a party to permit such other Pension Funds to join or merge with the Pension Fund.

*Section 6.*    PERSONAL LIABILITY.  The liability, if any, of the Board of Trustees or any individual Trustee or Trustees shall be governed by the following provisions to the extent permissible by applicable Federal law: Neither the Trustees nor any individual or Successor Trustee shall be personally answerable or personally liable for any liabilities or debts of the Fund contracted by them as such Trustees, or for the non-fulfillment of contracts, but the same shall be paid out of the Fund and the Fund is hereby charged with a first lien in favor of such Trustee for his or their security and indemnification for any amounts paid out by any such Trustee for any such liability and for his and their security and indemnification against any liability of any kind which the Trustees or any of them may incur hereunder, including cost of defense of litigation; provided, however, that nothing

- 12 -

herein shall exempt any Trustee from liability arising out of his own willful misconduct, bad faith or gross negligence, or entitle such Trustee to indemnification for any amounts paid or incurred as a result thereof.

The Trustees and each individual Trustee shall not be liable for any error of judgment or for any loss arising out of any act or omission in the execution of their duties, except in case of willful misconduct, bad faith or gross negligence; nor shall any Trustee, in the absence of his own willful misconduct, bad faith or gross negligence, be personally liable for the acts or omissions (whether performed at the request of the Trustees or not) of any other Trustee, or of any agent or attorney elected or appointed by or acting for the Trustees.

The Trustees shall be fully protected in acting upon any instrument, certificate or paper believed by them to be genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

Neither the Employers, nor the Union, shall in any way be liable in any respect for any of the acts, omissions or obligations of the Trustees, individually or collectively.

The Trustees may from time to time consult with the Trust's legal counsel and shall be fully protected in acting upon such advice of counsel to the Trust as respects legal questions.

Section 7.    BOOKS OF ACCOUNT. The Trustees shall keep true and accurate books of account and records of all their transactions, which shall be audited annually or more often by a certified public accountant selected by the Trustees. A copy of such audit shall be available at all

- 13 -

times upon reasonable notice for inspection by signatories to this Agreement at the principal office of the Fund.

Section 8.    EXECUTION OF DOCUMENTS.  The Trustees may authorize an Employer Trustee and a Union Trustee or any joint group equally composed of Employer and Union Trustees to execute jointly any notice or other instrument in writing and all persons, partnerships, corporations or associations may rely thereupon that such notice or instrument has been duly authorized and is binding on the Pension Fund and the Trustees.

Section 9.    DEPOSIT AND WITHDRAWAL OF FUNDS.  All monies received by the Trustees hereunder shall be deposited by them in such bank or banks as the Trustees may designate for that purpose and all withdrawals of monies from such account or accounts shall be made only by checks signed by the Trustees authorized in writing by the Trustees to sign such checks.  No check shall be valid unless signed by two persons of whom one shall be a Union Trustee and one an Employer Trustee, except when signed by a designated employee as provided in this Section.

The Employer Trustees shall designate in writing the name or names of any Employer Trustee who may sign checks in the above manner, and the Union Trustees shall likewise designate in writing the name or names of the Union Trustee who may sign checks in the above manner.

The Trustees may, in their discretion, designate and authorize an employee of the Fund to sign checks upon such separate and specific bank account or bank accounts as the Trustees may designate and establish for that purpose.

Section 10.    SURETY BONDS.  The Trustees and any employees of the Trustees who are empowered and authorized to sign checks as aforesaid shall each be bonded by a duly authorized

- 14 -

surety company in such amount as may be determined from time to time by the Trustees. Each such employee employed by the Trustees who may be engaged in handling monies of the Pension Fund shall also be bonded by a duly authorized surety company in the same manner. The cost of the premium on such bonds shall be paid out of the Pension Fund.

## ARTICLE VI

## CONTRIBUTIONS TO THE PENSION FUND

*Section 1.*     RATE OF CONTRIBUTIONS. In order to effectuate the purpose hereof, each Employer shall contribute to the Pension Fund the amount required by the Collective Bargaining Agreement between the Union and the Employer. The rate of contribution shall at all times be governed by the aforesaid Collective Bargaining Agreement then in force and effect, together with any amendments, supplements or modification thereto. On matters other than contribution rates, contributions to the Pension Plan shall be governed by the Rules and Regulations of the Pension Plan; contributions to the Annuity Plan shall be governed by the Rules and Regulations of the Annuity Plan.

*Section 2.*     EFFECTIVE DATE OF CONTRIBUTIONS. All contributions shall be made effective as required by the Collective Bargaining Agreement and shall continue to be paid as long as the Employer is so obligated pursuant to the Collective Bargaining Agreement with the Union or until he ceases to be an Employer within the meaning of this Agreement and Declaration of Trust, as hereinafter provided.

*Section 3.*     MODE OF PAYMENT. All contributions shall be payable to the "IUPAT Industry Pension Fund" and shall be paid in the manner and form determined by the Trustees.

- 15 -

36479-3

*Section 4.*    DEFAULT IN PAYMENT.    Non-payment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer in default for twenty days may be required at the discretion of the Trustees to pay such reasonable rate of interest as the Trustees may fix on the money due to the Trustees from the date when the payment was due to the date when payment is made, together with all expenses of collection (including attorneys' fees) incurred by the Trustees and such liquidated damages or penalties as may be assessed by the Trustees.

*Section 5.*    REPORT ON CONTRIBUTIONS.    The Employers shall make all reports on contributions in such manner and form as required by the Trustees.

*Section 6.*    AUDITS.    The Trustees may at any time have an audit made by certified public accountants of the payroll, wage and cash disbursement records, general ledger, and other financial records, including but not limited to tax returns, of any Employer in connection with the said contributions and/or reports. When an Employer receives notice that the Employer is scheduled for an audit, the Employer may write to the Fund 1) explaining why the time or date for the audit is impossible for the Employer to comply with and 2) offering alternative times or dates for an audit within a reasonable time. If the Fund does not receive such a written response from the Employer within 48 hours before the scheduled audit, the certified public accountants responsible for the audit may proceed as scheduled. If the Employer fails to cooperate with a scheduled audit, the Trustees may require that the Employer pay to the Fund all costs incurred as a result of the Employer's failure. Any Employer found delinquent or in violation of the Rules and Regulations of the Pension Plan

- 16 -

and/or the Annuity Plan as a result of an audit may be required by the Trustees to pay to the Fund the cost of the audit.

# ARTICLE VII

# PLAN OF BENEFITS

*Section 1.* BENEFITS. The Trustees shall have full authority to determine all questions of the nature, amount and duration of benefits to be provided, based on what is estimated the Fund can provide without undue depletion or excess accumulation; provided, however, that no benefits other than pension, annuity, death, disability and severance benefits may be provided for or paid under this Agreement and Declaration of Trust.

*Section 2.* RECIPIENTS OF BENEFITS. Benefits may be provided in accordance with Section 1 of this Article for any employee of a Contributing Employer covered by a Collective Bargaining Agreement between the Employer and the Union or other classes of employee defined in Article I, Section 9(a), (b) and (c).

*Section 3.* ELIGIBILITY REQUIREMENTS FOR BENEFITS. The Trustees shall have full authority to determine eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the employees and their beneficiaries.

*Section 4.* METHOD OF PROVIDING BENEFITS. The benefits shall be provided and maintained by such means as the Trustees shall in their sole discretion determine.

*Section 5.* WRITTEN PLAN OF BENEFITS. The detailed basis on which payment of benefits is to be made pursuant to this Agreement shall be specified in writing by appropriate action of the Trustees subject, however, to such changes or modifications by the Trustees from time to time

- 17 -

as they in their discretion may determine. All such changes or modifications shall similarly be specified in writing by appropriate resolution of the Trustees.

Section 6.    APPROVAL OF PLAN. (a) United States: The Pension Plan and Annuity Plan adopted by the Trustees shall be such as will qualify for approval by the Internal Revenue Service, U.S. Treasury Department, and will continue as qualified Plans, so as to ensure that the Employer contributions to the Pension Fund are proper deductions for income tax purposes  The Trustees are authorized to make whatever applications are necessary with the Internal Revenue Service to receive and maintain approval of the Pension Plan and the Annuity Plan. (b) Canada: The Pension Plan and Annuity Plan shall be such as will qualify for approval by Revenue Canada and for registration, as appropriate, under Provincial legislation.

Section 7.    LIMIT OF EMPLOYER'S LIABILITY. Except for withdrawal liability and delinquency liability provided by law, and except as provided in Article VI, the financial liability of any Employer shall in no event exceed the obligation to make contributions as set forth in its applicable Collective Bargaining Agreement with the Union.

## ARTICLE VIII

## MEETING AND DECISION OF TRUSTEES

Section 1.    OFFICERS OF TRUSTEES. The Trustees shall elect two Co-Chairmen, one from among the Union Trustees and the other from among the Employer Trustees. The terms of such officers shall commence on the date of their election and continue until his or their successors have been elected.

Section 2.    MEETING OF TRUSTEES. Meetings of the Trustees shall be held at such

- 18 -

place or places as may be agreed upon by the Co-Chairmen and may be called by the said officers

upon twenty (20) days' notice to the other Trustees and may be held at any time without such notice

if all the Trustees consent thereto in writing. The Co-Chairmen may also convene a meeting of the

Trustees by telephone conference called upon five (5) days notice to the other Trustees.

Section 3.    ACTION BY TRUSTEES WITHOUT MEETING.  Action by the Trustees

may also be taken by them in writing without a meeting; provided, however, that in such cases there

shall be unanimous written concurrence by all the Trustees.

Section 4.    QUORUM (UNITED STATES).  In all meetings of the Trustees, two Trustees

shall constitute a quorum for the transaction of business providing that there is at least one Employer

and one Union Trustee present at the meeting.  The vote of any absent Trustee shall be cast by the

Trustees present, designated by the same party with the same force as if such absent Trustee was

present.  If at any time there is an unequal number of Employer and Union Trustees appointed, the

Employer Trustees and the Union Trustees shall have equal voting strength with the difference in the

number appointed treated as absent Trustees.

Section 5.    MAJORITY VOTE OF TRUSTEES (UNITED STATES).  All action by the

Trustees shall be by majority decision of the Employer and Union Trustees.  Such majority vote shall

govern not only this Article but any portion of this Agreement and Declaration of Trust which refers

to action by the Trustees.  In the event any matter presented for decision cannot be decided because

of a tie vote, or because of the lack of quorum at two consecutive meetings, the matter shall be

submitted to arbitration as hereinafter provided.

Section 6.    QUORUM AND VOTING (CANADA).  In all meetings of the Canadian

- 19 -

36479-3

Trustees, two Trustees shall constitute a quorum for the transaction of business. All action by the Trustees shall be by unit vote, with the Union Trustees having 1 vote and the Employer Trustees having 1 vote. How each such vote is cast shall be decided by majority vote within each respective unit. In the event any matter presented for decision cannot be decided because of a tie vote, or because of the lack of quorum at two consecutive meetings, the matter shall be submitted to arbitration as hereinafter provided.

*Section 7.*    MINUTES OF MEETINGS. The Trustees shall keep minutes of all meetings but such minutes need not be verbatim. Copies of the minutes shall be sent to all Trustees.

## ARTICLE IX

## IMPARTIAL ARBITRATOR

*Section 1.*    APPLICATION OF THIS ARTICLE. If the Trustees cannot agree on an arbitrator, either the Employer Trustees or the Union Trustees or both may apply to the District Court of the United States for the District in the area in which the Fund maintains its principal office (the Canadian Trustees may apply to the competent court in the jurisdiction of the Courts of Ontario) for the designation of an arbitrator who will decide any dispute among the Trustees or any other matter submitted to arbitration in accordance with the provisions of Article VIII, Sections 5 or 6. The decision of the arbitrator shall be final and binding.

*Section 2.*    EXPENSES OF ARBITRATION. The cost and expense incidental to any arbitration proceedings, including the fee, if any, of the impartial arbitrator, shall be proper charges against the Fund and the Trustees are authorized to pay such charges.

- 20 -

36479-3

## ARTICLE X

## EXECUTION OF AGREEMENT AND DECLARATION OF TRUST

*Section 1.*    COUNTERPARTS. This Agreement and Declaration of Trust may be executed in any number of counterparts. The signature of a party on any counterpart shall be sufficient evidence of his execution thereof.

*Section 2.*    WRITTEN INSTRUMENT. An Employer may adopt and become a party to this Agreement and Declaration of Trust by executing a counterpart hereof or by executing any other written instrument wherein he agrees to participate in the Fund pursuant to the terms of this Agreement and Declaration of Trust, and upon written notification from the Trustees that he has been accepted as a Contributing Employer.

*Section 3.*    EFFECTIVE DATE. The effective date of this Restated Agreement and Declaration of Trust is April 1, 2002. This Restated Agreement and Declaration of Trust continues in effect, except as modified herein and by amendments duly adopted from time to time, the provisions of an Agreement and Declaration of Trust effective April 1, 1967.

## ARTICLE XI

## AMENDMENT TO AGREEMENT AND DECLARATION OF TRUST

*Section 1.*    AMENDMENT BY TRUSTEES. This Agreement and Declaration of Trust may be amended in any respect from time to time by the Trustees, provided that each amendment shall be duly executed in writing by the Trustees. As to any amendment, the Trustees, in their discretion, shall have power to fix the effective date thereof. Notice of the proposed amendment shall be given at the time the notice of the meeting is given, unless waived by the Trustees.

- 21 -

36479-3

Section 2.    LIMITATION OF RIGHT TO AMENDMENT.  No amendment may be adopted which will be in conflict with the Collective Bargaining Agreements with the Union to the extent that such agreements affect contributions to the Fund created hereunder, be contrary to the laws governing trust funds of this nature, or be contrary to any agreements entered into by the Trustees.  Under no circumstances shall any amendment be adopted which will in any way alter Article XIII, Section 1.

Section 3.    NOTIFICATION OF AMENDMENT.  Whenever an amendment is adopted in accordance with this Article, a copy thereof shall be distributed to all Trustees, and the Trustees shall so notify all necessary parties and shall execute any instrument or instruments necessary in connection therewith.

# ARTICLE XII

# TERMINATION OF TRUST

Section 1.    BY THE TRUSTEES.  This Agreement and Declaration of Trust may be terminated by an instrument in writing executed by all the Trustees when there is no longer in force and effect a Collective Bargaining Agreement between an Employer and the Union requiring contributions to the Fund.

Section 2.    BY THE PARTIES.  This Agreement and Declaration of Trust may be terminated by an instrument in writing duly executed by the Employers and the Union.

Section 3.    PROCEDURE ON TERMINATION.  In the event of the termination of this Agreement and Declaration of Trust, the Trustees shall apply the Fund to pay or to provide for the payment of any and all obligations of the Fund and shall distribute and apply any remaining surplus

- 22 -

36479-3

in such manner as will, in their opinion, best effectuate the purpose of the Fund; provided, however, that no part of the corpus or income of said Fund shall be used for or diverted to purposes other than for the exclusive benefits of the employees, their families, beneficiaries or dependents, or the administrative expenses of the Fund or for other payments in accordance with the provisions of the Fund.

Section 4.    NOTIFICATION OF TERMINATION    Upon termination of the Fund in accordance with this Article, the Trustees shall forthwith notify each Local Union and/or District Council of the Union and each Employer, who are parties hereto, and also all other necessary parties; and the Trustees shall continue as Trustees for the purpose of winding up the affairs of the Trust.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

Section 1.    NON-REVERSION.  Under no circumstances shall any portion of the corpus or income of the Fund, directly or indirectly, revert or accrue to the benefit of any Contributing Employer or Local Union, and/or District Council or the Union.

Section 2.    TERMINATION OF INDIVIDUAL EMPLOYERS. An Employer shall cease to be an Employer within the meaning of this Agreement and Declaration of Trust when he is no longer obligated, pursuant to a Collective Bargaining Agreement with the Union, to make contributions to this Pension Fund, or, as determined by the Trustees, when he is delinquent in his contributions or reports to the Pension Fund.

Section 3.    VESTED RIGHTS.  No Employee or any person claiming by or through such Employee, including his family, dependents, beneficiary and/or legal representative, shall have any

- 23 -

36479-3

right, title or interest in or to the Pension Fund or any property of the Pension Fund or any part thereof except as may be specifically determined by the Trustees.

Section 4.    ENCUMBRANCE OF BENEFITS.  No monies property or equity of any nature whatsoever, in the Pension Fund, or contracts or benefits or monies payable therefrom, shall be subject in any manner by an Employee or person claiming through such Employee to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same subject thereto shall be null and void, except for a qualified domestic relations order issued by a court of competent jurisdiction pursuant to law.

Section 5.    SITUS.  The City of Washington, D.C., shall be deemed the situs of the Trust Fund created hereunder.  All questions pertaining to validity, construction and administration shall be determined in accordance with federal law or, when applicable, the laws of the District of Columbia.

Section 6.    CONSTRUCTION OF TERMS.  Whenever any words are used in this Agreement and Declaration of Trust in the masculine gender, they shall be construed as though they were also in the feminine gender or neuter in all situations where they would so apply, and wherever any words are used in this Agreement and Declaration of Trust in the singular form, they shall be construed as though they were also used in the plural form in all situations where they would so apply, and wherever any words are used in the Agreement and Declaration of Trust in the plural form, they shall be construed as though they were also used in the singular form in all situations where they would so apply.

Section 7.    CERTIFICATION OF TRUSTEES' ACTIONS.  The Co-Chairmen of the

- 24 -

36479-3

Trustees may execute any certificate or document jointly on behalf of the Trustees and such execution shall be deemed execution by all the Trustees. All persons having dealings with the Pension Fund or with the Trustees shall be fully protected in reliance placed on such duly executed documents.

Section 8.     NOTIFICATION TO TRUSTEES. The address of each of the Trustees shall be that stated on the signature page of this Agreement and Declaration of Trust. Any change of address shall be effected by written notice to the Trustees.

Section 9.     SEVERABILITY. Should any provision in this Agreement and Declaration of Trust or in the Plan or Rules and Regulations adopted thereunder or in any Collective Bargaining Agreement be deemed or held to be unlawful or invalid for any reason, such fact shall not adversely affect the provisions herein and therein contained unless such illegality shall make impossible or impractical the functioning of the Trust and the Plan, and in such case the appropriate parties shall immediately adopt a new provision to take the place of the illegal or invalid provision.

Section 10.    TITLES. The title headings to the various Sections and Articles are for the purpose of convenience only and shall not have any legal significance apart from the text.

IN WITNESS THEREOF, the undersigned to hereby cause this instrument to be executed.

FOR THE INTERNATIONAL
UNION OF PAINTERS AND
ALLIED TRADES

BY: _____
James A. Williams
General President

FOR THE FINISHING CONTRACTORS
ASSOCIATION

BY: _____
John Frye
Chairman

- 25 -

36479-3

# INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND

United Unions Building, Suite 501
1750 New York Avenue, NW
Washington, DC 20006

Telephone: (202) 783-4884

## UNITED STATES TRUSTEES

James A. Williams
Co-Chairman

Alvin Levine
Co-Chairman

**Union Trustees**

**Employer Trustees**

Kenneth E. Rigmaiden
George Galis
William D. Candelori, Jr.
Robert Kucheran
Raymond J. Price, III
Raymond Sesma

Aristotle G. Aivaliotis
Joseph Brescia
Robert L. Cusumano
Richard A. Grund
Michael LeGood
Leo J. Manta
Steve Sharpe

## CANADIAN TRUSTEES

James A. Williams
Co-Chairman

Alvin Levine
Co-Chairman

**Union Trustees**

**Employer Trustees**

Robert Kucheran
William Nicholls

Adolf Gust
Richard Pazdzierski

# International Painters And Allied Trades Industry Pension Plan



## Rules and Regulations
### as amended and restated as of January 1, 2003



# IUPAT INDUSTRY PENSION PLAN

PAGE i

## TABLE OF CONTENTS

ARTICLE 1.   ESTABLISHMENT & CONSTRUCTION ........................................................... 1

Section 1.01   Establishment of Plan and Name ...................................................... 1
Section 1.02   Purpose ......................................................................................... 1
Section 1.03   Trustees ......................................................................................... 1
Section 1.04   Plan Effective Date ......................................................................... 1
Section 1.05   Amendment of Plan ......................................................................... 2
Section 1.06   Prohibited Amendments ................................................................... 2
Section 1.07   Merger or Transfer of Plan Assets ..................................................... 2
Section 1.08   Termination of Plan ......................................................................... 2
Section 1.09   Termination Actions ......................................................................... 3
Section 1.10   Notices ........................................................................................... 3
Section 1.11   Unauthorized Representations ........................................................... 3
Section 1.12   Construction ................................................................................... 3
Section 1.13   Choice of Law ................................................................................. 4
Section 1.14   Severability ..................................................................................... 4

ARTICLE 2.   ADMINISTRATION ............................................................................... 4

Section 2.01   Powers Of Trustees ......................................................................... 4
Section 2.02   Duties and Powers of Plan Administrator ............................................ 5
Section 2.03   Discretion ....................................................................................... 5
Section 2.04   Consultants ..................................................................................... 5
Section 2.05   Delegation and Allocation of Responsibility ........................................ 5
Section 2.06   Reliance ......................................................................................... 5
Section 2.07   Limitation of Liability ....................................................................... 5
Section 2.08   Indemnity ....................................................................................... 6

ARTICLE 3.   PARTICIPATION ................................................................................... 6

Section 3.01   Eligible Employees ........................................................................... 6
Section 3.02   Entry Date ....................................................................................... 7
Section 3.03   Termination of Participation ............................................................. 7
Section 3.04   Reinstatement of Participation ........................................................... 7
Section 3.05   Acceptance of a New Contributing Employer ....................................... 8
Section 3.06   Acceptance of A New Affiliated Employer ........................................... 8
Section 3.07   Additional Conditions ....................................................................... 9
Section 3.08   Delinquent Employers ..................................................................... 9
Section 3.09   Mergers ......................................................................................... 10

ARTICLE 4.   VESTING ............................................................................................. 10

Section 4.01   Vested Participant ........................................................................... 10
Section 4.02   Service Vesting ............................................................................... 10
Section 4.03   Age Vesting ................................................................................... 11
Section 4.04   Termination Vesting ......................................................................... 11
Section 4.05   Vesting Changes ............................................................................. 11
Section 4.06   Years of Vesting Service ................................................................... 11
Section 4.07   One-Year Break-in-Service ............................................................... 12
Section 4.08   Effect of One-Year Break ................................................................. 12
Section 4.09   Cure of One-Year Break ................................................................... 12
Section 4.10   Family and Medical Leave ............................................................... 13
Section 4.11   Qualified Military Service ................................................................. 13
Section 4.12   Permanent Break in Service ............................................................. 14

# IUPAT INDUSTRY PENSION PLAN                                PAGE ii

Section 4.13    Effect of Permanent Break .................................................... 14

ARTICLE 5.    ACCRUED PENSION BENEFIT CALCULATION ............................ 15

Section 5.01    Accrued Benefit ................................................................ 15
Section 5.02    Pension Benefit for Service before the Contribution Period - Qualification ......... 16
Section 5.03    Pension Benefit Credit for Service before the Contribution Period - Amount ........ 17
Section 5.05    Benefit Credit for Service during the Contribution Period ............................ 19
Section 5.06    Maximum Contribution Rates .................................................... 19
Section 5.07    Extra Contributions ............................................................ 20
Section 5.08    Contribution Rate .............................................................. 20
Section 5.09    Contribution Rate Changes ...................................................... 20
Section 5.10    Benefit Break-In-Continuity .................................................... 21
Section 5.11    New Groups .................................................................... 22
Section 5.12    Reciprocal Pension Agreements .................................................. 22
Section 5.13    Merger Agreements ............................................................ 23
Section 5.14    Post-Retirement Benefit Increases .............................................. 23

ARTICLE 6    PENSION BENEFIT PAYMENT ...................................................... 24

Section 6.01    Normal Retirement Pension -- Eligibility ........................................ 24
Section 6.02    Normal Retirement Age ........................................................ 24
Section 6.03    Normal Retirement Pension -- Amount .......................................... 24
Section 6.04    Late Retirement Pension -- Eligibility .......................................... 25
Section 6.05    Late Retirement Pension -- Amount ............................................ 25
Section 6.06    Mandatory Payment of Benefits ................................................ 25
Section 6.07    Mandatory Payment - Amount .................................................. 26
Section 6.08    Special Early Retirement Pension - Eligibility .................................. 27
Section 6.09    Special Early Retirement Pension - Amount ...................................... 28
Section 6.10    Early Retirement Pension -- Eligibility ........................................ 28
Section 6.11    Early Retirement Pension - Amount ............................................ 28
Section 6.12    Disability Pension -- Eligibility .............................................. 29
Section 6.13    Disability Pension - Amount .................................................... 30
Section 6.14    Effect of Recovery by a Disabled Pensioner ...................................... 30
Section 6.15    Early Vested Pension -- Eligibility ............................................ 31
Section 6.16    Early Vested Pension - Amount ................................................ 31
Section 6.17    Partial Pension - Eligibility .................................................. 32
Section 6.18    Partial Pension - Amount ...................................................... 32
Section 6.19    Partial Pension -- Payment Forms .............................................. 32
Section 6.20    Non-Duplication of Pensions .................................................... 32
Section 6.21    Taxes .......................................................................... 33

ARTICLE 7.    STANDARD PENSION PAYMENT FORMS .......................................... 33

Section 7.01    General Payment Restrictions .................................................. 33
Section 7.02    Commencement of Benefits Generally ............................................ 33
Section 7.03    Married Participants - General Rules .......................................... 34
Section 7.04    Single Participants - General Rules ............................................ 34
Section 7.05    Small Benefits ................................................................ 34
Section 7.06    Husband-and-Wife Pension at Retirement — Standard Form of Benefit Payment
                for Married Participants ...................................................... 35
Section 7.07    Waiver of Husband-and-Wife Pension ............................................ 35
Section 7.08    Pre-retirement Surviving Spouse Pension ........................................ 37
Section 7.09    Waiver of Pre-retirement Surviving Spouse Pension .............................. 37
Section 7.10    Pre-retirement Surviving Spouse Pension    Spouse Alternatives .................. 38
Section 7.11    Qualified Domestic Relations Orders ............................................ 39

## IUPAT INDUSTRY PENSION PLAN                                          PAGE iii

Section 7.12    Qualified Domestic Relations Order Procedures ........................................... 39
Section 7.13    Guaranteed Five-Year Pension (Unreduced Pension) — Standard Form of Benefit
                Payment for Unmarried Participants ........................................................... 40
Section 7.14    Pre-Retirement Death Benefit - Eligibility .................................................. 40
Section 7.15    Post-Retirement Death Benefit – Amount .................................................... 41
Section 7.16    Beneficiary ............................................................................................... 41
Section 7.17    Retirement and Suspension of Benefits Before Normal Retirement Age ............ 42
Section 7.18    Pensioner Reporting of Work Before Normal Retirement Age ....................... 42
Section 7.19    Resumed Benefits Before Normal Retirement Age – Eligibility ..................... 43
Section 7.20    Resumed Benefits Before Normal Retirement Age - Amount ......................... 43
Section 7.21    Suspension of Benefits after Normal Retirement Age .................................. 44
Section 7.22    Plan Disclosure of Suspension Rules ......................................................... 45
Section 7.23    Pensioner Reporting of Work after Normal Retirement Age .......................... 45
Section 7.24    Advance Determinations of Suspendible Work ............................................ 46
Section 7.25    Plan Notice of Suspension after Normal Retirement Age .............................. 46
Section 7.26    Resumption of Benefit Payments after Normal Retirement Age - Eligibility ...... 46
Section 7.27    Resumption of Benefit Payments after Normal Retirement Age – Amount ........ 47
Section 7.28    Waiver of Suspension ............................................................................... 48
Section 7.29    Incompetence or Incapacity of a Pensioner or Beneficiary ........................... 48
Section 7.30    Non-Assignment of Benefits ..................................................................... 48
Section 7.31    Payments to Minors ................................................................................ 49

ARTICLE 8.      OPTIONAL FORMS OF PENSION PAYMENT .............................................. 49

Section 8.01    General ................................................................................................... 49
Section 8.02    Joint and Survivor Options ...................................................................... 50
Section 8.03    Social Security (Level Income) Option ...................................................... 52
Section 8.04    Combined Level Income and Joint and Survivor Option ............................... 52
Section 8.05    Ten Year Certain Option .......................................................................... 53
Section 8.06    Lump Sum Payment Option ...................................................................... 53
Section 8.07    Benefit Payment Restrictions ................................................................... 54
Section 8.08    Trustee-to-Trustee Transfers - Rollovers ................................................... 58

ARTICLE 9.      CLAIMS PROCEDURE & BENEFIT PAYMENTS .......................................... 60

Section 9.01    Application .............................................................................................. 60
Section 9.02    Partial Pension - Application Procedure ..................................................... 60
Section 9.03    Information and Proof .............................................................................. 60
Section 9.04    Trustee Discretion and Authority .............................................................. 60
Section 9.05    Initial Claim Determination ..................................................................... 61
Section 9.06    Request for Review .................................................................................. 61
Section 9.07    Decision on Review ................................................................................. 61
Section 9.08    Administrative Delay ............................................................................... 62
Section 9.09    No Rights to Assets ................................................................................ 62

ARTICLE 10.     FUNDING ................................................................................................ 62

Section 10.01   Funding Policy ........................................................................................ 62
Section 10.02   Trust for Participants .............................................................................. 62
Section 10.03   Investments ........................................................................................... 62
Section 10.04   Source of Benefit Payments ..................................................................... 63
Section 10.05   Expenses ................................................................................................ 63
Section 10.06   Non-Reversion ........................................................................................ 63
Section 10.07   Employer Contributions ........................................................................... 63
Section 10.08   Irrevocability of Contributions ................................................................. 63
Section 10.09   Qualified Military Service Contributions .................................................... 63

# IUPAT INDUSTRY PENSION PLAN                                              PAGE iv

Section 10.10 Return of Mistaken Contributions.................................................. 64
Section 10.11 Delinquent Employers................................................................. 64
Section 10.12 Collection of Delinquent Contributions......................................... 65

## ARTICLE 11.    CONTRIBUTING EMPLOYER WITHDRAWAL .......................................... 66

Section 11.01 Employer Withdrawal - In General................................................. 66
Section 11.02 Control Group Employer - Definition.............................................. 66
Section 11.03 Construction Industry Employers - Definition.................................. 66
Section 11.04 Complete Withdrawal - Defined.................................................... 66
Section 11.05 Partial Withdrawal - Defined....................................................... 67
Section 11.06 Unfunded Vested Liability............................................................ 67
Section 11.07 Title IV Vested Benefits............................................................. 67
Section 11.08 Initial Unfunded Vested Liability................................................. 68
Section 11.09 Annual Change in Unfunded Vested Liability.................................. 68
Section 11.10 Reallocated Liability................................................................... 68
Section 11.11 Mergers.................................................................................... 69
Section 11.12 Amount of Control Group Employer Liability for Complete Withdrawal.... 69
Section 11.13 Employer Proportionate Share of Initial Unfunded Vested Liability........ 70
Section 11.14 Employer Proportionate Share of Annual Changes in Unfunded Vested Liability.... 70
Section 11.15 Apportionment Base Period.......................................................... 71
Section 11.16 Base Period Employer Contributions............................................. 71
Section 11.17 Pre-1980 Terminated Unit Contributions....................................... 72
Section 11.18 Employer Proportionate Share of Annual Charges for Reallocated Liability.... 72
Section 11.19 Transfers of Liability.................................................................. 72
Section 11.20 De Minimus Reduction................................................................ 73
Section 11.21 20-Year Payment Limitation........................................................ 73
Section 11.22 Insolvency Reduction................................................................. 73
Section 11.23 Partial Withdrawal Liability – Amount........................................... 73
Section 11.24 Payment of Withdrawal Liability.................................................. 73
Section 11.25 Notice and Collection of Withdrawal Liability................................ 74
Section 11.26 Withdrawal Liability Review........................................................ 74
Section 11.27 Withdrawal Liability Arbitration.................................................. 75
Section 11.28 Withdrawal Liability Default........................................................ 75
Section 11.29 Withdrawal Liability Collection Litigation..................................... 75
Section 11.30 Withdrawal Liability Abatement - Construction Industry Employers..... 76
Section 11.31 Withdrawal Liability Abatement – Other Employers......................... 76
Section 11.32 Mass Withdrawal...................................................................... 76

## ARTICLE 12.    TAX RULES AND AFFILIATED EMPLOYERS .............................................. 76

Section 12.01 Non-Discrimination.................................................................... 76
Section 12.02 Affiliated Employer Participation................................................. 77
Section 12.03 Conditional Adoption................................................................. 77
Section 12.04 General Affiliated Employer Rules................................................ 77
Section 12.05 Limitation Employer.................................................................. 78
Section 12.06 Top-Heavy Requirements........................................................... 78
Section 12.07 Maximum Benefit Limit.............................................................. 80
Section 12.08 Defined Benefit Plan Limit.......................................................... 80
Section 12.09 Section 415 Aggregation............................................................ 82
Section 12.10 Maximum Benefits Coordination................................................. 82
Section 12.11 Restricted (High-25) Employees................................................... 82

## ARTICLE 13.    DEFINITIONS ................................................................................ 83

## IUPAT INDUSTRY PENSION PLAN                    PAGE 63

(b) The Trustees may delegate or assign responsibility for investment (including acquisition and disposition of assets) to an Investment Manager on the written acknowledgment of the Investment Manager of its status as a fiduciary with respect to a Plan.

### Section 10.04  Source of Benefit Payments

Plan assets will be the sole source for the payment of benefits under the Plan.  This Plan has been established on the basis of an actuarial calculation that has established, to the extent possible, that the contributions will, if continued, be sufficient to maintain the Plan on a permanent basis, and fulfill the funding requirements of ERISA.

### Section 10.05  Expenses.

All expenses of establishing, administering and terminating the Plan and Trust with respect to the Plan will be paid from Plan assets.

### Section 10.06  Non-Reversion.

It is expressly understood that in no event shall any of the assets of the Plan revert to the employers or be subject to any claims of any kind or nature by the Employers.

### Section 10.07  Employer Contributions.

An Employer will pay contributions to the Plan or Trust, for allocation to the Plan as directed by the Trustees, as required by law, a Collective Bargaining Agreement, a Participation Agreement or the Trust Agreement and pay interest, liquidated damages and costs of collection (including audit and attorney fees) as required by the Collective Bargaining Agreement, Participation Agreement, Trust Agreement or law.

### Section 10.08  Irrevocability of Contributions

Contributions to the Trust or Plan are irrevocable. The Employers will have no right, title or interest in contributions once paid to the Plan or Trust and no Plan assets will revert to the Employers. The Trustees may return amounts paid by an Employer due to a mistake of fact, payments conditioned on qualification of the Plan or deductibility of a payment and correct any excess contributions (as defined in IRC 4972) as provided by law.

### Section 10.09  Qualified Military Service Contributions

(a) In accordance with applicable federal law, the Trustees may charge an Employer for contributions (without interest) with respect to Qualified Military Service after October 12, 1994 upon a timely return to work with the Employers under the Plan.

(b) Absent other resolution of the Trustees, the charge will equal

(1)  the current contribution rate(s) for similarly-situated active Eligible Employees during the period of Qualified Military Service, multiplied by

(2)  average contributory hours for the Employee during a period, equal to the lesser of a period equal to the term of Qualified Military Service or twelve (12) months before the Qualified Military Service began.

(c)  Absent other resolution of the Trustees, the charge shall be allocated to Employers as follows:

(1)  Contributions for Qualified Military Service of less than thirty (30) days will be charged to the last Employer before Qualified Military Service began.

(2)  Contributions for longer Qualified Military Service will be charged in proportion to an Employee's Hours of Service in Covered Employment with each Employer in the twelve (12) month period before Qualified Military Service began. Contributions chargeable to an Employer which are not collectible will be reallocated as if the Employee had no Hours of Service in Covered Employment with the uncollectible Employer.

*Section 10.10  Return of Mistaken Contributions*

(a)  The Trustees may return amounts erroneously paid to the Trust as allowed by law.

(b)  A contribution or withdrawal liability payment made by reason of a mistake of fact or law, other than a mistake relating to the qualification of a Plan under IRC 401 or the exemption of the Trust from tax under IRC 501(a), may be returned within six (6) months after a determination of a mistake by the Trustees.

(c)  A contribution which is conditioned on initial qualification of a Plan may be returned within one (1) year after an adverse determination, provided an application for determination is filed by the time prescribed for filing the Employer's return for the taxable year in which the Plan was adopted.

(d)  A contribution, which is conditioned on deductibility under IRC 404, may be returned (to the extent disallowed) within one (1) year after disallowance.

*Section 10.11  Delinquent Employers*

(a)  The Trustees may terminate a person or organization as an Employer if the person or organization fails to make contributions for more than 90 days after the due date. The action of the Trustees may create a Complete Withdrawal or Partial Withdrawal from the Plan by the Employer.

(b)  To once again become an Employer, the person or organization must post a bond in the amount of twice the delinquency and pay all current and delinquent contributions within three

## IUPAT INDUSTRY PENSION PLAN                                    PAGE 65

months of the posting of the bond. If the Employer fails to do so, the bond shall be forfeited and the Employer will not be permitted to resume status as an Employer.

(c) If the Employer satisfies the foregoing conditions and once again is allowed to participate on that basis, the bond will be returned if reports and contributions remain current for a period of one year following reinstatement.

(d) The Trustees and the Union retain the right to enforce payment of delinquencies in accordance with other provisions of this Plan, the Trust Agreement, the applicable Collective Bargaining Agreement or Participation Agreement and applicable law

*Section 10.12  Collection of Delinquent Contributions*

(a) In the case of a Contributing Employer that fails to make the contributions to the Plan for which it is obligated, in accordance with the terms and conditions of a collective bargaining agreement, the Trustees may bring an action on behalf of the Plan pursuant to ERISA 502(g)(2) to enforce the Contributing Employer's obligation.

(b) In any such action in which judgment is awarded in favor of the Plan, the Contributing Employer shall pay to the Plan, in accordance with the court's award:

    (1)    the unpaid contributions,

    (2)    interest on the unpaid contributions, determined at the rate for underpayment of federal income taxes under IRC 6621

    (3)    liquidated damages equal to the greater of

        (A)    the amount of interest charged on the unpaid contributions, or

        (B)    20 percent of the unpaid contributions,

    (4)    reasonable attorneys' fees and costs of the action, and

    (5)    such other legal or equitable relief as the court deems appropriate.

(c) Nothing in this section shall be construed as a waiver or limitation on the rights or ability of the Plan, Trustees or Union to enforce a Contributing Employer's contribution obligation in any other type of proceeding.

# AMENDMENT TO THE
## INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION PLAN
### (as restated effective January 1, 1999)

**Major Topic:**          Title to Plan Assets

**General Effective Date:**      January 1, 2004

The undersigned, pursuant to authorization of the Trustees of the International Painters and Allied Trades Industry Pension Fund, approve and ratify the following changes to the International Painters and Allied Trades Industry Pension Plan, as amended and restated as of January 1, 1999 and amended to date, ("Plan") and amend the Plan accordingly as set forth herein.

WHEREAS, the Trustees desire to amend the Plan to clarify that assets of the Plan or Trust include contributions that are due and payable by Employers as well as contributions that have been paid to the Plan or Trust, and

WHEREAS, the full board of Trustees has authorized the Co-Chairman to execute an amendment to reflect discussion and changes approved by the full board.

THEREFORE, the Plan shall be amended, effective on or after January 1, 2004 unless otherwise provided by the amendment or applicable law, in the following manner.

1.      Amend *Section 10.08 (Irrevocability of Contributions)* to read as follows (amended language is in bold italics):

Contributions *by Employers* to the Trust or Plan *are plan assets and* are irrevocable. The Employers will have no right, title or interest in contributions once paid to the Plan or Trust *or in contributions owed to the Trust or Plan in accordance with a collective bargaining agreement, the Trust Agreement, a Participation Agreement or applicable law but not yet paid* and no Plan assets will revert to the Employers. The Trustees may return amounts paid by an Employer due to a mistake of fact, payments conditioned on qualification of the Plan or deductibility of a payment and correct any excess contributions (as defined in IRC

4972) as provided by law.

Witness our signatures, pursuant to authority granted by the full Board of Trustees, to memorialize our action and the prior resolutions of the Trustees to amend and restate the Plan.

EMPLOYER TRUSTEES

By: _____
Ralph A. Trallo, Co-Chair

Date: _October 14_, 2003

UNION TRUSTEES

By: _____
James A. Williams, Co-Chair

Date: _October 14_, 2003

122882-1

2